(No. 59671.—)

*In re* ROBERT JOHN HEILGEIST, Attorney, Respondent.

*Opinion filed October 3, 1984.*

MORAN, J., took no part.

Jerome Larkin, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Sidney Z. Karasik, of Chicago, for respondent.

JUSTICE CLARK delivered the opinion of the court:

The respondent, Robert John Heilgeist, was admitted to the Illinois bar on November 29, 1955. On November 12, 1981, the Administrator of the Attorney Registration and Disciplinary Commission filed a complaint against the respondent alleging misconduct arising out of his dealings with two clients, Waldemar and Christel Hein. The Hearing Board recommended that respondent be suspended from the practice of law for 18 months. Respondent filed exceptions to the Hearing Board's recommendations. The Review Board of the Attorney Registration and Disciplinary Commission reviewed the matter and filed a report finding that respondent had "engaged

in the creation of false evidence," and that respondent had not failed to withdraw as the Heins' counsel in violation of the Code of Professional Responsibility. The Review Board recommended that respondent be censured. This court allowed the Administrator leave to file exceptions to the report of the Review Board.

Since the respondent, in his brief before this court, adopted the Administrator's statement of facts as contained in the Administrator's brief that was filed before the Review Board, we will also accept that statement of facts.

On May 25, 1978, Waldemar and Christel Hein consulted respondent regarding their rights arising out of an April 10, 1977, construction agreement with E. W. Wiswald Builders. The Heins presented respondent with the construction agreement, a list of items not properly or timely completed, various materialmen's liens, and pictures of the building.

According to the Heins, respondent advised them that they would be successful in a contract action against Wiswald and suggested that they terminate the construction agreement. When Waldemar Hein objected due to the further delay incident to such action, respondent suggested that the building could be completed by August 1, 1978, by Artisan Construction. Artisan Construction was an assumed name for a business being conducted by George Radtke, the fiance of respondent's secretary. The Heins agreed to follow respondent's advice and also to pay respondent a $500 retainer fee for his legal services, which Christel Hein sent to respondent on May 26, 1978.

Within a few days of the initial conference, respondent personally observed the serious construction problems. The building had been "red-tagged" for various building violations by the city building department. Shortly thereafter, pursuant to respondent's arrange-

ment, Radtke appeared at the site with a copy of the list which the Heins had provided respondent and inspected the building. The Heins did not participate in his inspection.

On June 6, 1978, pursuant to the direction of the Heins, respondent sent Wiswald a letter terminating the construction agreement. Shortly after June 22, 1978, Christel Hein delivered to respondent's office a summons and complaint which was served on her and related to Wickes v. VIP Holding, E. W. Wiswald Builders, Waldemar Hein and Christel Hein, 78 CH 205 (circuit court of Lake County). On July 6, 1978, respondent filed an appearance, answer and counterclaim against Wiswald in that case on behalf of the Heins.

On or before August 3, 1978, respondent drafted a proposal on behalf of Artisan, for submission to the Heins, setting forth certain construction services to be performed on the building which was the subject of the above-described construction agreement and litigation. Shortly thereafter, respondent delivered the proposal to the Heins.

According to the Heins, after they had reviewed the document, they returned to respondent's office and discussed the proposal with him. Waldemar Hein questioned the quoted prices, especially the $2,700 carpentry figure. According to the Heins, respondent replied that his legal fees would be included, but that the Heins should not disclose this to the judge. Respondent allegedly further cautioned the Heins to attribute the payments to be made solely to carpentry, brickwork and plumbing. Respondent denied making any such statements.

After returning home and discussing the proposal, Waldemar Hein signed it. Christel Hein brought the signed document back to respondent's office. Christel Hein testified that after she and respondent made various adjustments to the proposal, respondent signed "Ar-

tisan Constr." to the document. According to respondent, respondent's secretary signed "Artisan Constr."

A few days after the proposal had been accepted, respondent undertook to complete the services described in the Artisan contract because Radtke abandoned the contract. Respondent knew if he did the work he might have to be a witness in the case in which he was representing the Heins. According to respondent, he advised the Heins of Radtke's abandonment and offered to complete the construction services for them. Respondent testified that the Heins and he entered into such an agreement after respondent disclosed that as a result of his dual role as attorney and builder, he might have to withdraw as their attorney and appear at trial to prove the extent of damages. The Heins denied that respondent made any such disclosures.

Pursuant to their proposal and at the direction of the respondent, on three different occasions the Heins delivered to respondent three cashier's checks purchased from the Elmhurst Federal Savings and Loan Association and made payable to Artisan Construction. The three checks, dated August 28, 1978, September 26, 1978, and December 26, 1978, totaled $8,539.95. According to respondent, he requested these checks for use as evidence, because it was to the advantage of the Heins. Respondent anticipated that these checks payable to Artisan would be introduced at trial, even though Artisan had done little work and had received only $200.

Respondent endorsed and cashed each of the above-described checks at the Bank of Lake Villa, deposited the cash into his business account at the same bank, and paid various family members and other individuals cash for various construction services without obtaining any receipts. The record indicates that respondent retained a portion of the $8,539.95 for his contracting services. The record does not indicate how much of the money was

kept by respondent, but the Heins did not allege that the $8,539.95 was excessive or unreasonable.

On January 24, 1979, while representing the Heins in case No. 78 CH 205, respondent filed answers to interrogatories, sworn to by the Heins, stating that Arthur Lichter Construction Company (Arthur Lichter did some brick work on the fireplace of the Heins' building) and Artisan Construction were the only contractors which performed services at the building and attributing the work of his family to Artisan Construction. Respondent attached copies of the face of two of the checks payable to Artisan, but cashed by respondent. It is unclear from the record why the respondent did not produce a copy of the face of the third check. At the deposition of Waldemar Hein taken on March 2, 1979, respondent represented that Artisan was the contractor involved.

As of March 19, 1979, respondent had sent no bill to the Heins for any legal services. On March 19, 1979, respondent threatened to withdraw if the Heins did not pay $1,450 in additional legal fees prior to trial. On March 26, 1979, Waldemar Hein demanded an accounting of the funds delivered to respondent and stated that respondent had told them in August 1978 that his fee would be included in the proposal amount. On March 27, 1979, respondent wrote a letter to Waldemar Hein giving him an accounting of the legal work he had done and the hours he had spent. In his letter, the respondent did not deny that the proposal price was to include his legal fees. On April 8, 1979, Waldemar Hein replied in writing, stating, in part:

> "When we signed the contract with you, you told us that all of the lawsuits will be included in $8,905 and $500 retainer, but we should not tell the judge about it."

On April 11, 1979, respondent replied in writing:

> "I did not say not to tell anyone. I said if you wanted to collect it, don't tell anyone. Tell anyone anything you

want but if you destroy your case, don't blame me."

On April 26, 1979, respondent countered with the following proposal:

"Upon payment of One Thousand Four Hundred Fifty ($1,450.00) Dollars by Wally and Christel Hein, the undersigned agrees to:

Prosecute 78 CH 205 and all claims thereunder to a conclusion in the Trial Court and in addition to:

(1) Raise and block the garage valley roof at 845 North Nathan Hale Drive, Westmiltamore.

(2) Install 1/4 Round in house.

(3) Install gutters and downspouts.

(4) Install 1 x 2 along Gable ends.

(5) Sand and finish floors."

When the Heins refused to enter into this agreement or pay any further funds to respondent, he withdrew. At this time, the construction services set forth in the August 3, 1978, proposal had not been completed. The Heins hired another contractor who completed them at a cost exceeding $4,000. They also incurred legal fees in retaining another attorney to conclude the litigation, which was settled within three months.

The Administrator raises two issues on appeal before this court. First, whether the Review Board erred in reversing the Hearing Board's finding that respondent had violated the Code by entering into a business transaction with his clients and by failing to withdraw as the Heins' counsel and, second, whether the respondent's conduct warrants 18 months' suspension, the recommendation of the Hearing Board, or censure, the recommendation of the Review Board.

Since the alleged misconduct in this case occurred prior to 1980, when this court adopted our Code of Professional Responsibility as part of our rules, the rules under which the respondent was charged and which are cited and quoted are the rules of the Illinois State Bar

Association which were in effect at the time of the alleged misconduct and then administered by the Attorney Registration and Disciplinary Commission.

In his brief, the respondent quotes from *In re Moore* (1956), 8 Ill. 2d 373, 379, wherein this court stated:

> "[T]he power to discipline is not arbitrary, and must be exercised with legal discretion and caution. Proof of charges must be established by clear and convincing evidence, and the record must be free from doubt not only as to the act charged, but as to the motive with which it was done. *In re Lasecki,* 358 Ill. 69; *In re Donaghy,* 402 Ill. 120, 123."

It is clear that entering into a business transaction with a client was not a *per se* violation of DR 5—104(A). The rule provided:

> "(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented *after full disclosure.*" (Emphasis added.) Illinois Code of Professional Responsibility, DR 5—104(A) (Illinois State Bar Association (rev. ed. 1977)).

The respondent in the instant case testified that he informed the Heins of his dual role and in his brief asserts that "when Artisan failed to perform the work, [he] attempted to rescue the Heins by completing the work himself." Mr. Hein stated that he knew the Heilgeists and saw them working on the house. He even testified that he worked with them. He also testified that he had "never seen Artisan Construction on my job, on my house." Mr. Hein's testimony supports respondent's contention that the Heins knew Artisan had backed out of the proposal and that the respondent and his family had taken over the work. Besides the fact that the Administrator failed to sustain his burden of proof regarding the charge of failure to disclose, there was no con-

vincing evidence regarding the respondent's motive for the charge. The respondent did not stand to gain personally by attempting to bail out a client whose house had been red-tagged for numerous building violations. We therefore hold that the Review Board did not err in reversing the Hearing Board because the Administrator failed to sustain his burden of proof regarding the respondent's alleged failure to fully disclose his dual role and his alleged motive.

The Review Board also did not err in reversing the Hearing Board concerning the respondent's failure to withdraw as the Heins' counsel. The Administrator asserted that respondent violated DR 5—102(A), which provided:

> "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5—101(B)(1) through (4)." Illinois Code of Professional Responsibility, DR 5—102(A) (Illinois State Bar Association (rev. ed. 1977)).

The exceptions which were enumerated in DR 5—101(B)(1) through (4) are as follows:

> "A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
>
> (1) If the testimony will relate solely to an uncontested matter.
>
> (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

Although it is arguable that respondent's continued representation fell under one of the exceptions to DR 5—102(A), the respondent never asserted that this case fell under an exception and therefore we will not address that point.

The Hearing Board found that respondent violated DR 5—102(A) by "continu[ing] to represent the Heins in a matter in which the respondent expected to be called as a witness." The Review Board found that since respondent had "attempted to rescue the Heins by completing the work himself," he was on the job site directing personnel and paying the workers and, "[h]aving undertaken this responsibility, there was a possibility that Respondent would be called as a witness." However, the Review Board also stated:

"However, that [the possibility of being a witness] isn't sufficient to preclude his continued representation. There is no evidence that his testimony would have been indispensible at trial."

We agree with the Review Board that the respondent was not required to withdraw under the facts of this case, because it was not, as required by DR 5—102(A), "*obvious* that he [the respondent] or a lawyer in his firm *ought to be called as a witness.*" (Emphasis added.) Respondent knew that there was a possibility that if the case actually went to trial, he might be called as a witness. We do not believe that the respondent here was required to withdraw based on the possibility that he might have to become a witness, considering the stage

of the representation with which we are dealing in this case.

The last charge that we will address is the one that concerns us. Respondent has been charged with creating false evidence in violation of DR 7—102(A)(6) and (7) (Illinois State Bar Association (rev. ed. 1977)). The Hearing Board found that respondent had participated in the creation of false evidence. The Review Board also stated that "[t]here is little doubt that Respondent engaged in the creation of false evidence." The charge for creation of false evidence is based on the fact that respondent advised his clients to obtain cashier's checks made payable to Artisan Construction for work that was being done on their home, when, in fact, Artisan was no longer doing the work. Respondent contends that the advice he gave to the Heins to obtain cashier's checks "was nothing more than an effort to prepare for trial and obtain probative, competent evidence that not only did the Heins incur the damages, in support of their counterclaim, but they had paid the charges incurred." The Administrator alleges that the respondent had the Heins obtain the checks so as to "obtain legal fees from Wiswald [the original builder] under the guise that they were contract damages to which the Heins were entitled *** unnecessarily involv[ing] the Heins in a fraud."

Assuming, *arguendo,* that the allegation regarding the legal fees being somehow built in to the fees for construction were true, two thoughts come to mind. First, the respondent had nothing to gain by trying to get his legal fees in this fashion. Respondent would still have received his legal fees from the Heins, his clients, regardless of whether he built them in to the contract damages. So he did not have anything to gain as the Administrator alleges. Second, the sum that was charged, $8,539.95, has at no time been alleged to be unreasonable or excessive for the construction services per-

formed. If that sum is not unreasonable for the construction services, then we do not believe the legal fees were hidden.

However, it was improper for the respondent to tell the Heins to have the checks made payable to Artisan Construction when he knew the money was really being distributed to persons other than those associated with Artisan. By handling the situation in this manner, respondent, even if it were not true, made it look as though he was trying to hide or misrepresent who was actually doing the construction work. While we do think the respondent used poor judgment in the way he handled the payments for the construction work, we do not believe that the respondent's conduct warrants an 18-month suspension as the Hearing Board recommended.

The purpose of attorney disciplinary proceedings is to safeguard the public and maintain the integrity of the legal profession. (*In re Levin* (1979), 77 Ill. 2d 205, 211.) While it is true that this court recognizes the need for uniformity in the sanctions it imposes in these cases (*In re Clayter* (1980), 78 Ill. 2d 276, 283), we are also cognizant of the fact that each case presents a unique factual situation and must be carefully evaluated based on its own merits (*In re Hopper* (1981), 85 Ill. 2d 318, 324).

In the instant case the Administrator has not asked for restitution. There is no allegation of an overcharge for either attorney fees or construction costs. It does not appear that the Heins were damaged in any way except for the fact that they had to hire a new lawyer after the respondent refused to represent them unless he received his fee. As the Review Board pointed out, the respondent stood to gain little, if anything, from his alleged misconduct, so that personal gain could not have been a motivating factor. The respondent is 55 years of age and has had a previously unblemished record after 28 years of practicing law in the State of Illinois.

We do not agree with the Administrator that this case is comparable to *In re Howard* (1978), 69 Ill. 2d 343, or *In re Kien* (1977), 69 Ill. 2d 355. In both those cases, the respective respondents paid police officers assertedly to secure their truthful testimony in court. We believe that eliciting certain testimony for money is different than having checks made payable to an incorrect party. The record indicates that respondent somehow believed that it looked better for his clients if the checks were made payable to a construction company. We agree with both the Hearing Board and the Review Board that respondent, by advising his clients to make their checks payable to a company that was not actually performing the construction work on their home, participated in the creation of false evidence. We therefore believe that the respondent's conduct warrants a three-month suspension.

For the foregoing reasons, we hold that suspension of the respondent from the practice of law for three months is the appropriate sanction in this case.

*Respondent suspended.*

JUSTICE MORAN took no part in the consideration or decision of this case.