WEIL, FREIBURG AND THOMAS, P.C., Plaintiff-Appellant, v. SARA LEE CORPORATION *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—89—3163

Opinion filed August 12, 1991.

Weil, Freiburg, Thomas & Petersen, P.C., of Chicago (Charles P. Fox, of counsel), for appellant.

Jenner & Block, of Chicago (Marguerite M. Tompkins and Christopher D. Liguori, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Weil, Freiburg & Thomas, P.C. (WF&T), a law firm, appeals orders of the circuit court of Cook County dismissing two counts of its amended complaint, dismissing its motion to disqualify defense counsel and entering summary judgment in favor of defendants Sara Lee Corporation (Sara Lee) and Twin Rivers Transportation Company (Twin Rivers) on WF&T's second amended complaint.

The record on appeal indicates the following. In 1987 and 1988, Lyle Braun, Linda Karvunis and Robert Fischer (the Braun group) were employed as the general manager, office manager and operations manager, respectively, of Twin Rivers. In August 1987, Sara Lee and the Braun group began discussing a management buy out of Twin Rivers. On October 26, 1987, Braun drafted a memorandum on Twin Rivers letterhead to William Doane, Braun's supervisor at Sara Lee. This memorandum sought to confirm various understandings and

agreements regarding the proposed sale of Twin Rivers. One of the numbered items in the memorandum reads as follows:

"4) You have given us authority to secure legal assistance as required to develop our business plan and complete the transaction. Again, this expense will be born [*sic*] by Twin Rivers as the costs are incurred."

Doane allegedly made handwritten comments on the memorandum and returned it to Braun. Copies of this memorandum in the record contain a handwritten comment next to paragraph number four reading "Yes if within reason." The memorandum was returned with a cover sheet on Sara Lee letterhead dated October 31, 1987. This cover sheet purports to be from William Doane to Lyle Braun and is signed "Bill Doane." The cover sheet states in part:

"Thanks for the memo regarding TRTC [Twin Rivers] and KOSL [Kitchens of Sara Lee]. I have indicated my comments on the attached copy. I think the on-going relationship is accurately described by your memo, tempered with my comments.

According to Linda and Bob Fischer, it sounds like business is doing well. We have a 9:00 a.m. appointment with Jim Carlson to discuss the TRTC buy-out proposal."

The memorandum and cover sheet will be referred to collectively hereinafter as "the Doane-Braun memoranda."

On or about November 7, 1987, the Braun group approached Jeffery Taylor, then a member of plaintiff WF&T, regarding the possibility of representing them in the transaction. Taylor was shown a copy of the Doane-Braun memoranda. WF&T then agreed to represent the Braun group at the firm's customary hourly rates.

From November 1987 through April 1988, the Braun group and Sara Lee engaged in negotiations regarding the proposed sale of Twin Rivers. The Braun group was represented by WF&T; Sara Lee was represented by in-house counsel. Numerous negotiation sessions were held and various proposals were exchanged. The parties discussed the issue of professional fees. Sara Lee offered to pay $5,000, which was to include legal fees, bank fees and accounting fees. During this negotiating period, WF&T allegedly sent monthly invoices to Twin Rivers or Sara Lee. Twin Rivers paid WF&T $15,906.61 in a timely manner.

The management buy out of Twin Rivers was never completed. On April 5, Sara Lee came to believe that the Braun group had spent substantial amounts of Twin Rivers funds for the sole benefit of Twin Rivers in anticipation of the sale. Twin Rivers previously had an average monthly profit of $10,000; Sara Lee believed that expenditures for trucking equipment, supplies, marketing materials, computer

equipment and season tickets for the Chicago Bears 1988 season, among other items, would result in a one-month loss of $180,000.

In May 1988, WF&T submitted invoices totalling $2,943.96 to Twin Rivers. In June 1988, WF&T received a letter from defendants' outside counsel, which states in part:

> "You were retained by Lyle Braun, Linda Karvunis and Robert Fischer to represent them in connection with their proposed acquisition of Twin Rivers Transportation Company ('TRTC'). My clients agreed only to pay your clients' *reasonable* attorneys' fees incurred in connection with the acquisition. The expenses that your clients incurred exceeded any reasonable amount. Indeed, that issue was the subject of negotiations between the parties on April 5, when my clients first learned of the legal expenses that your clients had incurred. Accordingly, you should look to your clients for payment of your most recent statement.

> [In-house counsel's] letter of April 7, 1988 does not acknowledge any obligation by Sara Lee or Twin Rivers to pay legal expenses incurred prior to that date. It merely placed you on notice that under no circumstances would Sara Lee or Twin Rivers pay any further expenses incurred by your clients."

(Emphasis in original.)

On August 11, 1988, WF&T filed a complaint against Twin Rivers and Sara Lee seeking the unpaid charges. Defendants moved to dismiss the complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). The trial court denied the motion, but dismissed the complaint *sua sponte* pursuant to section 2—612 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—612) and granted WF&T leave to file an amended complaint.

WF&T filed an amended complaint on January 5, 1989, alleging: (I) Twin Rivers breached an oral contract with WF&T; (II) Sara Lee and Twin Rivers were estopped from asserting that Twin Rivers was not bound to pay legal fees to WF&T; and (III) WF&T was a third-party beneficiary of an agreement between Sara Lee or Twin Rivers and the Braun group to pay WF&T's legal fees. Defendants moved to dismiss all three counts of the amended complaint pursuant to section 2—615; on March 31, 1989, the trial court dismissed counts II and III with prejudice. The court also struck count I of the complaint, but granted WF&T leave to replead an oral contract or estoppel theory against Twin Rivers. All claims against Sara Lee were dismissed at this point.

WF&T timely filed a two-count second amended complaint against Twin Rivers, alleging breach of oral contract and estoppel. In response, Twin Rivers filed a motion for summary judgment on both counts pursuant to section 2—1005 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005), attaching excerpts of depositions and trial testimony taken in a separate action in which the Braun group unsuccessfully attempted to compel the sale of Twin Rivers. The trial court ordered Twin Rivers to file an answer to the second amended complaint in order to frame the issues. WF&T filed its memorandum in opposition to summary judgment, attaching an affidavit of Taylor concerning the circumstances under which WF&T was hired.

In the interim, WF&T moved to disqualify Twin Rivers' outside counsel pursuant to section 5—101(b) of the Illinois Code of Professional Responsibility (107 Ill. 2d 5—101(b) (repealed and superseded by new rules effective August 1, 1990)), which prohibited an attorney from participating as an advocate in cases where she ought to be called as a witness. WF&T argued that in the June 1988 letter to WF&T, one of the attorneys in the outside firm admitted having knowledge of a contract; hence, WF&T would be required to depose her and call her as a witness at trial. On September 29, 1989, the trial court denied this motion, but stated that WF&T could reassert the motion if the case should go to trial.

On October 26, 1989, the trial court granted Twin Rivers' motion for summary judgment on both counts and dismissed WF&T's second amended complaint with prejudice.

## I

On appeal, plaintiff WF&T first challenges the dismissal of counts II and III of its first amended complaint. A trial court should dismiss a cause of action on the pleadings only if it is clearly apparent that no set of facts can be proven which will entitle a plaintiff to recover. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504, 565 N.E.2d 654, 657.) Although a motion to dismiss does not admit conclusions of law or fact unsupported by the specific factual allegations in the complaint, all well-pleaded facts in the attacked portions of the complaint are taken as true; on appeal, this court must decide whether the allegations in the first amended complaint, interpreted in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Burdinie*, 139 Ill. 2d at 505, 565 N.E.2d at 657.

■■ Count II of the first amended complaint sounds in estoppel. "Apparent authority," or "authority by estoppel," flows from the acts of a principal and thus differs from "implied authority," which flows from circumstantial evidence. (*Northern Trust Co. v. St. Francis Hospital* (1988), 168 Ill. App. 3d 270, 278, 522 N.E.2d 699, 704.) Apparent authority arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf. A principal that places an agent in a situation where the agent may be presumed to have authority to act is estopped as against a third party from denying the agent's apparent authority. (*Crawford Savings & Loan Association v. Dvorak* (1976), 40 Ill. App. 3d 288, 292-93, 352 N.E.2d 261, 264.) The elements of apparent agency are: (1) the principal's consent to or knowing acquiescence in the agent's exercise of authority, (2) the third party's knowledge of the facts and good-faith belief that the agent possessed such authority, and (3) the third party's detrimental reliance on the agent's apparent authority. *Northern Trust Co.*, 168 Ill. App. 3d at 278, 522 N.E.2d at 704.

■■ ■ As to the existence of an agency, a corporate subsidiary may act as the agent of its parent corporation if the elements of agency are proved. (*Kern v. Uregas Service of West Frankfort, Inc.* (1980), 90 Ill. App. 3d 182, 205, 412 N.E.2d 1037, 1055.) Agency can be proved by inference and circumstantial evidence. (*Lundberg v. Church Farm, Inc.* (1986), 151 Ill. App. 3d 452, 502 N.E.2d 806.) A presumption of agency may arise from an employer-employee relationship. (See *Bell v. Reid* (1983), 118 Ill. App. 3d 310, 314, 454 N.E.2d 1117, 1120.) Neither the fact nor the extent of an agency can be proved solely by past declarations of the purported agent; agency must normally be established by evidence of acts of the principal or the statements of the principal to the agent or third persons. (*Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 42, 343 N.E.2d 207, 210.) A person can be an agent for two persons at the same time so long as the dual agency is revealed to both parties. *Warner v. Young* (1923), 308 Ill. 239, 241, 139 N.E. 393, 394.

Count II of the first amended complaint alleged that the members of the Braun group were employees of Twin Rivers, a wholly owned subsidiary of Sara Lee. WF&T also alleged that William Doane, a superior of the members of the Braun group at Sara Lee, authorized the Braun group to retain legal counsel at Twin Rivers' expense, within reason. These allegations, viewed in the light most favorable to plaintiff, are sufficient to survive a section 2—615 motion on whether an agency existed.

■ Count II also alleged that Sara Lee consented to or knowingly acquiesced in the hiring of WF&T at Twin Rivers' expense. WF&T alleged that Sara Lee knew of the agreement that Twin Rivers would pay the Braun group's reasonable legal expenses, knew that the Braun group had retained counsel for the negotiations and knew that the legal fees were being paid by Twin Rivers. While such allegations may be conclusory in many cases, the record in this case indicates that WF&T incorporated two exhibits attached to the complaint: the Doane-Braun memoranda and the June 1988 letter from defendants' outside counsel. Therefore, the allegations were sufficient in this case.

■ As to the issue of WF&T's knowledge and good-faith belief that the agents acted within their authority, we note that under Illinois law, a third party dealing with an agent has the duty to use reasonable diligence to ascertain the scope of the agent's authority. (*E.g., Chalet Ford, Inc. v. Red Top Parking, Inc.* (1978), 62 Ill. App. 3d 270, 274, 379 N.E.2d 88, 91.) This duty may be more clear where the agent is also acting as his own agent, due to the suspicious nature of the transaction. (See Restatement (Second) of Agency §165, Comment *c* (1958). But see Restatement (Second) of Agency §165, Comment *a* (1958) (section 165 assumes there is neither actual nor apparent authority).) However, apparent authority may exist even when an agent or dual agent is adverse to the principal. See *Hannah v. Hannah* (1968), 94 Ill. App. 2d 372, 236 N.E.2d 783 (opposing counsel in divorce action could act as agent); see also *Dawson v. Duncan* (1986), 144 Ill. App. 3d 532, 539-40, 494 N.E.2d 900, 905 (suggesting potential conflict of interest had nothing to do with authority of agent); *cf. Blanchard v. Lewis* (1953), 414 Ill. 515, 524, 112 N.E.2d 167, 172 (self-dealing does not violate duty to principal if agent makes full disclosure); Restatement (Second) of Agency §390, Comment *a* (1958) ("[o]ne employed as agent violates no duty to the principal by acting for his own benefit if he makes a full disclosure of the facts to an acquiescent principal and takes no unfair advantage of him").

■ In this case, WF&T alleged that Taylor asked the Braun group for proof of its authority. The Braun group allegedly produced the Doane-Braun memoranda, which allegedly shows that Sara Lee had authorized the Braun group, as agents of Sara Lee or Twin Rivers, to retain counsel at Twin Rivers' expense. These allegations, viewed in the light most favorable to WF&T, are sufficient to survive a section 2—615 motion regarding WF&T's diligence, knowledge of facts and good-faith belief in the agents' authority.

Finally, WF&T has alleged sufficient facts on the issue of detrimental reliance. WF&T alleged that their reliance on the Braun group's authority has resulted in over $2,000 of unpaid services. Thus, count II of the first amended complaint, viewed in the light most favorable to WF&T, alleged that WF&T had a reasonable impression that the Braun group was authorized. Regardless of what defendants may be able to show later, count II alleged facts sufficient to survive a section 2—615 motion.

WF&T next challenges the dismissal of count III of the first amended complaint, which alleged that WF&T is a third-party beneficiary of the agreement between Sara Lee and the Braun group reflected in the Doane-Braun memoranda. Defendants argue that summary judgment was proper since there was no contract and even if there were a contract, WF&T lacked standing to enforce it.

■■ The first question is whether WF&T sufficiently alleged the existence of a contract. This question is answered by examining whether the traditional elements of contract formation were alleged. (*Cf. Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318.) Letters embodying preliminary negotiations are enforceable in contract if it is clear that the ultimate contract will be substantially based on the terms of the letters and the parties intended to be bound. (See *Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 287-89, 565 N.E.2d 990, 993-94 (letter of intent).) If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the document is a factual question which must survive a motion to dismiss. *Quake Construction, Inc.*, 141 Ill. 2d at 288-89, 565 N.E.2d at 994.

■■ Viewing the allegations in the light most favorable to WF&T, Braun's memorandum could be construed as an offer to Sara Lee. The Doane-Braun memoranda, which added the caveat of "if within reason," could be construed as a counteroffer to the Braun group. The Braun group's retention of WF&T could be construed as performance which would bind Sara Lee under a unilateral contract theory. (*Cf. Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.) Whether the parties intended to be bound by paragraph number four of the Doane-Braun memoranda is a factual question that cannot be decided by a motion to dismiss. *Quake Construction, Inc.*, 141 Ill. 2d at 289, 565 N.E.2d at 994.

Defendants note that Judge O'Brien has already held that the Doane-Braun memoranda is not a contract in a separate case. Of course, the decision of the circuit court in a separate case is not binding on this court. Moreover, Judge O'Brien was faced with the ques-

tion of whether the Doane-Braun memoranda was a contract for the sale of Twin Rivers, not whether WF&T has properly alleged there was a contract to retain counsel at Twin Rivers' expense while negotiating the sale.

■■■ As the question is likely to arise on remand, we turn to the second question—whether WF&T has alleged facts that would allow recovery on the alleged contract as a third-party beneficiary. A third party acquires no rights under a contract entered into by others unless the provision at issue was intentionally included for the direct benefit of the third party. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 421 N.E.2d 182; *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498.) The contract need not specifically name a third-party beneficiary if it adequately defines a class of individual beneficiaries. (*Altevogt*, 85 Ill. 2d at 55, 421 N.E.2d at 187; see also *Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 475 N.E.2d 1327 (involving attorney's standing to enforce fee arrangement).) However, an intent to benefit a third party "must affirmatively appear from the language of the instrument when properly interpreted and construed." *Parrett*, 346 Ill. at 257-58, 178 N.E. at 501.

We believe that *Metro East Sanitary District* controls this case to the extent that WF&T would have standing to enforce paragraph number four of the Doane-Braun memoranda, so long as WF&T can prove that it is a contract. The cases defendants cite to argue that it is the "foremost purpose" of the agreement which determines whether a party can maintain a third-party beneficiary claim do not stand for that proposition; rather, they apply the general rules contrasting direct and incidental beneficiaries cited above. (See *Wilde v. First Federal Savings & Loan Association* (1985), 134 Ill. App. 3d 722, 480 N.E.2d 1236; *Bescor, Inc. v. Chicago Title & Trust Co.* (1983), 113 Ill. App. 3d 65, 446 N.E.2d 1209.) Hence, WF&T has alleged the elements of a third-party beneficiary theory necessary to survive a motion to dismiss.

■■■ In sum, given the unusual set of facts this court is obliged to take as true for the purposes of a section 2—615 motion, we believe plaintiff has alleged specific facts which, when interpreted in the light most favorable to the plaintiff, are sufficient to survive the motion to dismiss counts II and III of the first amended complaint.

II

WF&T then challenges the order granting summary judgment to Twin Rivers on both counts of the second amended complaint. Sum-

mary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) In order to survive a motion for summary judgment, the nonmoving party must come forward with evidentiary material that establishes a genuine issue of fact. (*Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55, 545 N.E.2d 184.) Nevertheless, because summary judgment is a drastic method of terminating litigation, the movant's entitlement must be free from doubt. (*Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 233, 564 N.E.2d 778, 780.) Accordingly, the court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. (*Logan*, 139 Ill. 2d at 234, 564 N.E.2d at 780.) The existence and scope of an agency relationship are questions of fact, unless the parties' relationship is so clear as to be undisputed. *Northern Trust Co.*, 168 Ill. App. 3d at 276, 522 N.E.2d at 703.

█ Count I of the second amended complaint alleged breach of oral contract by Twin Rivers. This claim differs from count II of the first amended complaint only insofar as it is based on a claim of actual, rather than apparent, authority. This difference is significant, however, as an agent may bind a principal, even when the suspicious nature of the transaction should put a third party on notice, so long as the agent had actual authority. See Restatement (Second) of Agency §165, Comment c (1958).

██ Defendants suggest two reasons why summary judgment was proper. The first reason offered is that the facts are undisputed that the Braun group was not acting as authorized agents; however, the record here does not establish that the relationship between the Braun group and defendants was so clear as to be undisputed. The second reason defendants offer is that WF&T merely introduced the "self-serving affidavit" of "Jeffery Taylor who 'was impeached six different times on material issues' in a hearing before Judge O'Brien." Defendants fail to indicate the issues on which Taylor was allegedly impeached in this separate case or their connection to this case. Defendants suggest that Taylor's affidavit directly contradicts his prior sworn testimony, yet fail to specify which portion of said prior testimony supports this assertion. Although the record on appeal does indicate that the amount of fees was a subject of dispute in the transaction, the record does not indicate that the prior testimony contradicts Taylor's affidavit that defendants were bound to pay some amount of fees.

Hence, WF&T's introduction of the Taylor affidavit raised questions concerning the existence and scope of an agency relationship between the members of the Braun group and Twin Rivers. The questions raise genuine issues of material fact, rendering summary judgment inappropriate in this case.

Count II of the second amended complaint alleged that Twin Rivers was estopped from denying liability. Similar to count II of the first amended complaint, WF&T's claim turns on whether the members of the Braun group had apparent authority. We have already explained in this opinion why the peculiar circumstances involved here raise factual questions concerning the relationship of the Braun group to defendants; we need not be redundant.

In sum, whether summary judgment was proper turns on whether, at the time WF&T undertook to represent the Braun group, the Braun group was authorized or WF&T could have reasonably relied on the Doane-Braun memoranda; the allegedly improper acts taken by the Braun group months later do not bear on these issues. We wish to emphasize that this court is expressing no opinion on the merits of this case. The second amended complaint and the Taylor affidavit, however, raise genuine issues of material fact sufficient to survive summary judgment, given that the record is not clear or undisputed on questions regarding the actual or apparent authority of members of the Braun group to act as dual agents.

III

Finally, plaintiff argues that the trial court erred in denying its motion to disqualify opposing counsel pursuant to Rule 5—101(b) of the Illinois Code of Professional Responsibility (107 Ill. 2d R. 5—101(b) (repealed and superseded by new rules effective August 1, 1990)). Rule 5—101(b) provided, with exceptions not at issue here, that "[a] lawyer shall not accept employment in contemplated or pending litigation if he knows or if it is obvious that he or a lawyer in his firm ought to be called as a witness." On review, we treat plaintiff's motion as implicitly invoking Rule 5—102 (107 Ill. 2d R. 5—102 (repealed and superseded by new rules effective August 1, 1990)), which mandated withdrawal as counsel in situations where Rule 5—101(b) applied.

■■■ The rule prohibiting a lawyer from acting as both advocate and witness in the same case reflects a number of important considerations. Permitting an advocate in a matter to testify as a witness in that matter may unfairly prejudice the case of his or her client or the opposing party and may erode public confidence in the administration

of justice. (See *Jones v. City of Chicago* (N.D. Ill. 1984), 610 F. Supp. 350, 357.) All of the policy considerations raised by the attorney-witness prohibition should be applied in deciding a disqualification motion. See *United States v. Morris* (7th Cir. 1983), 714 F.2d 669, 671.

Conversely, our courts disapprove of the use of disqualification motions as a tactical weapon in litigation insofar as such motions can be misused for purposes of harassment. (*Hannan v. Watt* (1986), 147 Ill. App. 3d 456, 497 N.E.2d 1307.) Such motions also serve to destroy the attorney-client relationship by preventing a party from freely retaining the counsel of his or her choice. (See *In re Marriage of Thornton* (1985), 138 Ill. App. 3d 906, 486 N.E.2d 1288.) Thus, disqualification is regarded as a drastic measure (see *Freeman v. Chicago Musical Instrument Co.* (7th Cir. 1982), 689 F.2d 715) which courts should grant only when the movant can show that the lawyer's testimony is likely to prejudice the testifying lawyer's own clients. See *Freeman v. Kulicke & Soffa Industries, Inc.* (E.D. Pa. 1978), 449 F. Supp. 974, *aff'd without opinion* (3d Cir. 1979), 591 F.2d 1334.

■■ Although the canons of ethics are designed to safely guide attorney conduct, they are not otherwise legally binding on this court. (*E.g., In re Kutner* (1979), 78 Ill. 2d 157, 399 N.E.2d 963.) However, in the context of attorney discipline, our supreme court has stated that an attorney was not required to withdraw "based on the possibility that he might have to become a witness, considering the [early] stage of the representation." *In re Heilgeist* (1984), 103 Ill. 2d 453, 462-63, 469 N.E.2d 1109, 1113.

WF&T's motion in this case arises from the June 1988 letter in which outside counsel wrote: "My clients agreed only to pay your clients' *reasonable* attorneys' fees in connection with the acquisition." (Emphasis in original.) WF&T contends that because defendants' current position in this case is that they never agreed to pay WF&T's fees, WF&T will be required to depose outside counsel and call her as a witness to expose the prior statement. Defendants' outside counsel argues that the June 1988 letter "denied any obligation" to WF&T and that, in any event, outside counsel's statement would be inadmissible at trial. The record shows that the trial court denied the motion because WF&T had shown no injury to itself prior to summary judgment, but stated that WF&T could renew its motion at trial.

■■ The trial court's disposition of the motion was within its discretion. An attorney may represent a client in the early stages of a case in which he or she may possibly be a witness without being subject to discipline (*Heilgeist*, 103 Ill. 2d at 462-63, 469 N.E.2d at 1113); plaintiff has failed to show why an attorney should nevertheless be le-

gally barred from representing a client during the early stages of this litigation. Plaintiff has not shown that opposing counsel's testimony would be prejudicial to defendants or that the June 1988 letter is even admissible as an evidential admission of the defendants. (See *In re Estate of Martin* (1990), 201 Ill. App. 3d 1061, 1070, 559 N.E.2d 1112, 1118; E. Cleary, McCormick on Evidence §§262, 264, 267 (2d ed. 1972).) Thus, WF&T failed to show that outside counsel "ought to be called as a witness" when the motion was decided.

For the aforementioned reasons, we reverse the judgment of the circuit court of Cook County dismissing counts II and III of the first amended complaint and granting summary judgment on both counts of the second amended complaint; we affirm the judgment of the circuit court denying the motion to disqualify opposing counsel. The cause is remanded in order that plaintiff may replead consistent with this opinion.

Affirmed in part; reversed in part and remanded for further proceedings.

MANNING, P.J., and O'CONNOR, J., concur.