**In re DeVLIEG, INC., Debtor.**

**DeVLIEG–BULLARD, INC., Appellant,**

v.

**Bernard J. NATALE, Chapter 11 Trustee, Appellee.**

**Kathryn S. DeVLIEG, as Trustee of the Kathryn S. DeVlieg Revocable Living Trust, Appellant,**

v.

**Bernard J. NATALE, Chapter 11 Trustee, Appellee.**

**Nos. 91 B 31744 (Bankruptcy), 94 C 50129 (Appeal) and 94 C 50143 (Appeal).**

United States District Court, N.D. Illinois, Western Division.

Oct. 21, 1994.

court and that a creditor's avoidance cause of action may then accrue under Tennessee law.

## MEMORANDUM OPINION AND ORDER
REINHARD, District Judge.

### INTRODUCTION

Appellants DeVlieg–Bullard, Inc. ("DBI") and Kathryn DeVlieg, as trustee of the Kathryn S. DeVlieg Living Trust, filed these consolidated appeals[1] of the appointment of Ritz, Shair & Willette ("RS & W") as counsel for specified special purposes under 11 U.S.C. § 327(e) for appellee Bernard J. Natale, chapter 11 trustee (the "trustee") in the bankruptcy of DeVlieg, Inc. (the "debtor"). This court possesses jurisdiction over these appeals under 28 U.S.C. § 158.

### BACKGROUND

On August 5, 1991, the debtor filed a voluntary chapter 11 petition. Prior to filing the petition, debtor had retained RS & W to handle bankruptcy matters, including assisting in filing the petition. After doing so, RS & W represented the debtor in the bankruptcy until January of 1994, at which point the debtor terminated RS & W. Debtor's reason for terminating RS & W involved the initiation, in August of 1993, of a suit in the Northern District of Illinois, Western Division, captioned *DeVlieg, Inc. v. Charles E. Bradley*, No. 93 C 20208 (the "LBO Litigation"), alleging various fraudulent conveyances and breaches of fiduciary duty by various of debtor's insiders, including the debtor's then sole officer, John G. Poole. According to the debtor, RS & W initiated the LBO Litigation without the debtor's authorization.

Shortly thereafter, the United States Trustee sought and obtained the approval of the bankruptcy court to appoint a chapter 11 trustee. The United States Trustee then appointed Bernard J. Natale as trustee. The

---

1. By order entered June 27, 1994, these appeals were consolidated and Kathryn S. DeVlieg was relieved of any duty to file further pleadings, as she joined and adopted the positions taken by DBI. Therefore, references hereafter to contentions and assertions made by DBI are taken to include Kathryn DeVlieg as well.

trustee, in turn, on March 1, 1994, filed an application to employ his own firm as counsel for the trustee under section 327(a) and an application to employ RS & W as counsel for specified special purposes under section 327(e).[2] The latter application acknowledged that RS & W had served as counsel to the debtor until January 25, 1994 and outlined the pending matters in which RS & W had been involved as counsel for the debtor. It also represented that, other than this prior representation, RS & W had no connection to any party in interest and did not hold or represent an interest adverse to the estate. The application then suggested that, because RS & W "has represented the debtor in possession in these matters since their inception [for] two and one-half years" and was thus "fully familiar with the relevant facts and applicable law" and because it would cost the estate a great amount of money to have new counsel get up to speed on these matters, essentially duplicating the efforts of RS & W which had already been paid for, employment of the firm as special counsel for the specified purposes of the listed matters would be in the best interest of the estate.

The specified special matters for which the trustee proposed RS & W be appointed counsel were listed as follows:[3]

   a. DeVlieg, Inc. v. Bradley, et al., Case No 93 C 20208 (U.S.D.Ct.N.D.Ill.1993), a suit to recover in excess of ten million dollars from insiders of DeVlieg and others for each of 19 Counts of violations of the Uniform Fraudulent Transfers Act, the Uniform Fraudulent Conveyance Act, and other laws. In response to this adversary, some of the defendants filed the countersuit Bradley v. Kochenash, Case No 393 CV 02049 (U.S.D.Ct., D.Conn.1993).

   b. Claims on accounts receivable of the debtor, including DeVlieg v. McDonnell Douglas Corporation, Case No 93 C 20104 (U.S.D.Ct., N.D.Ill.1993), which is a claim to collect $90,000, a claim in negotiation against DeVlieg–Bullard, Inc. To collect less than $50,000, and the collection of the remaining $12,600 to be aid by Minnesota Diversified or CIT on an agreed settlement.

   c. Recovery of preferences, including DeVlieg v. Workers Compensation Trust of Illinois, Case No 92 A 5196 (U.S.B.Ct., N.D.Ill.1992), to recover the sum of $126,000.

   d. Continuing the examination into, negotiation of, and where necessary, litigation of, objections to certain claims filed against the estate in which Counsel is in varying degrees already active:

     i. Pension Guaranty Corporation claims of approximately $2,972,600.00, both as to amount and as to whether they should be first priority expenses of administration, fourth priority pension claims, or general unsecured claims. The objection to this claim has been extensively briefed and negotiated.

     ii. National Labor Relations Board claims of more than $250,000.00, both as to amount as to how much should be fourth priority pension claims or general unsecured claims. This has been extensively investigated.

     iii. United Auto Workers claims, including severance pay claims of approximately $680,000.00, and vacation pay claims of approximately $93,000.00. both as to amount and as to whether they should be first priority expenses of administration or general unsecured claims. This has been extensively investigated.

     iv. Individual severance pay and vacation pay claims.

     v. Workers Compensation Trust of Illinois claims, for post-petition insurance premiums and general unsecured.

---

2. The United States Trustee had previously appointed the official Committee of Unsecured Creditors (the "creditors committee"), and, on September 12, 1991, the bankruptcy court had approved retention of Barrick, Switzer, Long, Balsley & Van Evera ("Barrick Switzer") as counsel for the creditors committee.

3. This list is included here verbatim and not corrected for grammar, punctuation, or citation form.

vi. Wausau Insurance Company claim for post-petition insurance premiums.

vii. Stanwich Oil & Gas, SOG Sub., Inc., Stanwich Partners, Inc., DeVlieg–Bullard, Inc., Somersworth and other insiders' claims, in excess of $9,000,000 with whom DeVlieg has negotiated and litigated over the past two and one-half years, and about which Counsel already has a substantial body of information regarding their claims. this involves the Global Settlement Agreement.

viii. Westinghouse Consolidated Industries claims; Kathryn S. DeVlieg Revocable Living Trust claims; Greyhound Financial Corporation claims; Dresser, f/k/a Roots Dresser, Industries claims.[4]

At the time of filing of the application to appoint RS & W special counsel, RS & W held an unpaid claim for legal services of approximately $96,000,[5] on top of allowed administrative claims of approximately half-a-million dollars. The affidavit of David Shair of RS & W in support of appointment as section 327(e) special counsel acknowledged existence of the unpaid claim and that it made RS & W an "interested person" not available to be appointed under section 327(a) for appointment as general counsel to the trustee. The unpaid claim has since, on April 6, 1994, been approved, as reduced, by the bankruptcy court and paid to RS & W.

Both DBI and Kathryn DeVlieg, as trustee of the Kathryn S. DeVlieg Living Trust (the largest unsecured creditor in the bankruptcy case), filed objections to the appointment of RS & W. After holding oral argument on the objections to the appointment of RS & W as special counsel, the bankruptcy judge ruled in favor of appointment of RS & W as counsel for the trustee for special purposes. The bankruptcy judge stated that "[t]he fact that there are several special purposes does not cause th[ose] purposes to lose their identity as special purposes" and that any "adverse interest" held by RS & W due to their legal fees was "an extremely thin one." Based upon the unnecessary cost of employing a new firm to essentially repeat work done by RS & W, the bankruptcy court determined that employing RS & W was in the best interest of the estate. The bankruptcy judge was careful to reserve ruling on any specific conflict that might arise later in any one of the specific matters for which the appointment was made.[6] On March 25, 1994, the bankruptcy judge entered an order consistent with this oral ruling.

### CONTENTIONS

DBI contends that the bankruptcy court erred under section 327, in that RS & W holds interests adverse to the estate on the specific matters for which it was appointed under 327(e), that RS & W has in fact been appointed to conduct the case, which may be done only under section 327(a) and not under section 327(e), and that as the former counsel for the debtor, RS & W is an interested party and therefore cannot be appointed under section 327(a).

The trustee contends that RS & W is disinterested with respect to the matters for which it was hired as special counsel and that RS & W is not "conducting the case," and, therefore, qualifies for appointment under section 327(e). In the alternative, the trustee contends that because the fee application pending when appointment was originally sought has since been approved and paid, RS & W qualifies as disinterested and, therefore, may be appointed under section 327(a).

---

**4.** This list varies in form slightly from that contained in the bankruptcy court's March 25, 1994 order approving appointment of RS & W as counsel for the trustee on these matters. Because the bankruptcy court did not greatly substantively modify the list presented in the trustee's application for appointment and because the latter list contains more elaboration than the bankruptcy court's list, it is the trustee's list which is presented here. In approving appointment of RS & W, the trustee did remove items (d)(iv) and (d)(vi).

**5.** Application for Allowance of Fees and Expenses of Attorneys For Debtor From 10/1/93 Through 1/25/94.

**6.** The March 25, 1994 order consistent with this ruling reflects this reservation as well, concluding, "The entry of this order is without prejudice in the event of changed circumstances or new developments regarding the role of special counsel in these proceedings."

502

## DISCUSSION

■ Under Fed.R.Bankr.P. 8013, the bankruptcy court's conclusions of law are reviewed *de novo,* and its findings of fact are reviewed for clear error. *In re Newman,* 903 F.2d 1150, 1152 (7th Cir.1990). Employment of professionals, such as attorneys, by a bankruptcy trustee is authorized under section 327 of Chapter 11 of the Bankruptcy Code. The requirements of section 327 are to be strictly construed, especially in the conflict of interest setting. *See In re Envirodyne Indus., Inc.,* 150 B.R. 1008, 1018 (Bankr.N.D.Ill.1993) (Schwartz, C.J.). According to section 327(a), the trustee may, with approval of the bankruptcy court, employ one or more attorneys, as long as those attorneys are disinterested persons and do not hold or represent an interest adverse to the bankruptcy estate. An attorney who has represented the debtor prior to appointment of a trustee generally will not satisfy the requirements of this section, since that attorney will have claims for fees against the estate and will have been associated with the debtor. *See In re Interstate Distribution Ctr. Assoc. (A), Ltd.,* 137 B.R. 826, 833 (Bankr.D.Colo.1992). An exception to section 327(a)'s strict requirements, however, exists in the form of section 327(e). According to section 327(e),

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

■ In the present case, RS & W performed legal work for the debtor both before and after filing the petition and has been a major administrative claimant against the es-

tate. Under such circumstances, RS & W is not a disinterested party and may hold an interest adverse to the estate. As a consequence, RS & W must be employed by the trustee under section 327(e), if at all. *See In re NRG Resources,* 64 B.R. 643, 647 (W.D.La.1986) (stating that "the *only* way an attorney who has previously represented the debtor can be employed by the trustee" is according to the requirements of section 327(e) (emphasis in original)); *Interstate Distribution,* 137 B.R. at 833 (same); *see also* H.Rep. No. 95–595 to H.R. 8200, 95th Cong., 1st Sess. p. 328 (1977), *reprinted in* 5 U.S.C.C.A.N. 95th Cong., 2d Sess. pp. 5787, 6284–6285 (1978) (section 327(e) "does not authorize the employment of the debtor's attorney to represent the estate generally or represent the trustee in the conduct of the bankruptcy case."). This conclusion is bolstered by section 327(e)'s express provision for employment of the debtor's former attorney, implicitly recognizing that such employment is not permitted under section 327(a).

■ Thus, if employment of RS & W is appropriate, the firm must qualify under section 327(e). There are three conditions for such employment. First, for RS & W to be employed under section 327(e), doing so must be in the best interest of the estate. The bankruptcy judge found that employment of RS & W with respect to the listed matters was in the best interest of the estate. This court finds no reason this conclusion of the bankruptcy court would constitute clear error. As the firm which initiated the LBO Litigation and other matters, RS & W possesses a high degree of familiarity with their legal bases and with the evidentiary materials these highly complex matters involve. Any new attorney employed at this point in these matters would, of necessity, be required to duplicate a great deal of RS & W's efforts, at substantial expense to the estate.[7]

---

7. Indeed, the purpose behind the no-adverse-interest requirements of §§ 327(a) & (e), is to ensure objective advising of the bankruptcy trustee. The concern with former counsel for the debtor is that they will not be in a position to provide such advice. *See Interstate Distribution,* 137 B.R. at 833 (recognizing as basis of rule against trustee employing debtor's former counsel "because the trustee should have an advisor

impartial as between creditors"); *NRG Resources,* 64 B.R. at 647. In the present case, this concern does not appear to be implicated: as evidenced by the timing and apparent circumstances of the filing of the LBO Litigation, RS & W may actually have begun acting in the interest of the estate (and, in doing so, not necessarily following the direction of its then-client, the debtor) even before a chapter 11 trustee had

*See NRG Resources,* 64 B.R. at 647 (purpose of section 327(e) exception to general rule against trustee employing former counsel of debtor is to avoid "unnecessary duplication of services at the expense of the estate."). In fact, a complex case such as the LBO litigation is apparently precisely the special purpose which motivated Congress to create section 327(e). *See* H.Rep. No. 95–595 to H.R. 8200, 95th Cong., 1st Sess. p. 328 (1977), *reprinted in* 5 U.S.C.C.A.N. 95th Cong., 2d Sess. pp. 5787, 6284–6285 (1978) (stating that section 327(e) "will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation").

Second, for RS & W to be employed under section 327(e), it must not hold an interest adverse to the estate with respect to the matter for which the attorney is employed. *See In re Hempstead,* 34 B.R. 624, 626 (Bankr.S.D.N.Y.1983). This is a more relaxed conflict-of-interest standard than is found in section 327(a), in that section 327(e) does not contain two requirements found in section 327(a). First, section 327(e) does not require that counsel be a "disinterested person," as section 327(a) does, permitting counsel to have claims for prior fees. Second, section 327(e) requires only that counsel not have an interest adverse "with respect to the matter on which such attorney is to be employed," as opposed to section 327(a)'s broader requirement that counsel not have an interest adverse "to the estate."

■ In the present case, try as it might, DBI has not been able to demonstrate that RS & W holds or represents any interest adverse to the matter for which the firm is employed. DBI hypothesizes three possible adverse interests: that due to the circumstances surrounding initiation of the LBO Litigation, RS & W may be required to testify in that case; that the trustee will be required to pass on any liquidation plan proposed by the debtor; and that RS & W holds administrative claims for work done for the debtor. The last of these hypothetical conflicts is not troublesome. As has been explained, it is section 327(a), and not 327(e), which prohibits employment of an interested person and which prohibits employment of a person holding or representing an interest adverse to the estate as a whole. As this court has made clear, RS & W cannot represent the trustee as section 327(a) counsel. Under 327(e), by contrast, to be disqualified, the interest held by RS & W must be adverse to the estate on the particular matter for which the firm is employed. DBI has not demonstrated how the possession of administrative claims is adverse to the estate on any of the specified special matters on which RS & W will represent the trustee. *Cf.* Jay L. Westbrook, Fees and Inherent Conflicts of Interest, 1 Am.Bankr.Inst.L.Rev. 287 (1993) (discussing fee-based conflict-of-interest issues arising out of representation of debtors-in-possession).

■ Equally meritless is the theory that an adverse interest is created by the requirement under 11 U.S.C. § 1106(a)(3) that the trustee review the terms of any liquidation plan proposed by the debtor. DBI contends that because RS & W represented the debtor and the trustee will have to review any liquidation plan submitted by the debtor, RS & W should be disqualified from representing the trustee under section 327(e). Review of liquidation plans is not among the enumerated tasks for which RS & W is to be employed, however, and section 327(e) only prohibits holding or representing interests adverse to those specified matters.

■ DBI's final hypothetical ground of disqualification under section 327(e) is that because the circumstances surrounding initiation of the LBO Litigation may themselves be litigated and because RS & W might be

been appointed. Thus, the usual concern with employment of former counsel for the debtor, residual loyalty to that client, would not appear to be a problem here. *Cf. In re Bohack Corp.,* 607 F.2d 258, 263–64 (2d Cir.1979) (disqualification for certain litigation of special counsel who represented the debtor pre-petition and did not name as defendant in that litigation chairman of debtor, with whom counsel had an ongoing association). In so noting, however, the court does not pass on whether such behavior would comply with applicable standards of professional responsibility.

called on to testify in that litigation, RS & W possesses an interest adverse to the estate in regard to the LBO Litigation. Rule 3.7 of the Rules of Professional Conduct for the Northern District of Illinois generally precludes a lawyer from acting as an advocate if the lawyer may be called as a witness on behalf of the client. DBI argues that because RS & W may have initiated the LBO Litigation without authorization by the debtor, its attorneys may be called as witnesses in the LBO Litigation itself.

▬▬▬ Whether RS & W should be so disqualified is a matter best determined within the context of the LBO Litigation itself.[8] If this court were to disqualify RS & W in that litigation, the bankruptcy court could, at that time appoint new special purpose counsel, if necessary.[9] Attorney disqualification "is a drastic measure which courts should hesitate to impose except when absolutely necessary," *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir.1983), and motions for disqualification "should be viewed with extreme caution for they can be misused as techniques of harassment," *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721–22 (7th Cir.1982). *Accord Weil, Freiberg and Thomas, P.C. v. Sara Lee Corp.*, 218 Ill.App.3d 383, 160 Ill.Dec. 773, 782–83, 577 N.E.2d 1344, 1353–54 (1st Dist.1991) (in Illinois, disqualification under the attorney-as-witness rule is a drastic measure, disapproved as a litigation tactic, and to be used only when moving party demonstrates the

attorney's testimony is likely to prejudice that attorney's own client's case). The burden of demonstrating the necessity of disqualification lies with the moving party. *DCA Food Indus., Inc. v. Tasty Foods, Inc.*, 626 F.Supp. 54, 60 (W.D.Wis.1985). Given the high standard for disqualification and the substantial hardship that would be faced by the estate if RS & W were disqualified,[10] RS & W does not possess an interest adverse to the estate on the LBO Litigation which should prevent appointment under 327(e). Further, DBI disputes but has not refuted the possibility that trustee ratification of the initiation of the LBO Litigation will moot the need for RS & W to testify, which is itself a failure to sustain DBI's burden of demonstrating that disqualification is necessary. Thus, DBI has not at this time demonstrated the absolute necessity of disqualifying RS & W, and that firm does not possess an interest adverse to the estate in the LBO Litigation such that appointment is inappropriate under section 327(e).

▬▬▬ Third, for RS & W to be employed under section 327(e), the "specified special purpose" for which the firm is employed must not rise to the level of "conducting the case" for the trustee, a requirement obviously created to prevent section 327(e)'s exception from swallowing section 327(a)'s rule. *See In re Tidewater Memorial Hosp.*, 110 B.R. 221, 227–28 (Bankr.E.D.Va.1989). The specified special matters for which RS & W has been appointed counsel involve prosecut-

---

8. The attorney-as-witness disqualification decision is very circumstance specific, *see Gusman v. Unisys Corp.*, 986 F.2d 1146 (7th Cir.1993), and dependent upon factors which will only be fully revealed in the proceeding where the attorney will putatively be called as a witness. At that time, the court will have discretion to determine whether the attorney may appear as a witness without withdrawing and to allow or forbid the attorney from being called to the stand. *United States v. Morris*, 714 F.2d 669, 671–72 (7th Cir. 1983). The decision may depend upon whether the evidence is easily available from other sources. *United States v. Dack*, 747 F.2d 1172, 1176 n. 5 (7th Cir.1984); *United States v. Johnston*, 690 F.2d 638, 644 (7th Cir.1982).

9. Indeed, in its original order appointing RS & W special counsel, the bankruptcy court wisely reserved ruling on any specific adverse interest under § 327 which might later arise in any one

of the specific matters for which RS & W was appointed.

10. In fact, under Rule 3.7(a)(4), an attorney may serve even in the face of being called upon as a witness on behalf of the client if refusing that employment would work a "substantial hardship" upon the client. RS & W has been involved in the LBO Litigation from its inception. In light of RS & W's unique knowledge of the LBO Litigation and the need to preserve the assets of the estate, the court finds (for purposes of the present appeal only), as the bankruptcy court did implicitly, that removing RS & W from the case based on a mere possibility of having to testify would work such a substantial hardship on the estate. As a result, RS & W would only be prohibited from serving if the testimony will not be on behalf of the client and will be prejudicial to the estate, under Rule 3.7(b).

 

ing the LBO Litigation, litigating certain claims on accounts receivable, recovering preferences, and examining, negotiating, and litigating objections to certain claims. The application for appointment listed specific cases and claims within each of these categories.

From the specific examples appearing in the record, the court can discern that a great deal of the legal work involved in the bankruptcy is not contained within the list of matters for which RS & W was appointed. More important than the quantity of this work, however, is its qualitative content: the trustee's firm as general counsel and RS & W as special counsel simply play very different roles. In regard to the litigation involving McDonnell Douglas, the trustee presented evidence demonstrating how once RS & W had reached a proposed settlement, it was the trustee who moved the bankruptcy court for approval, indicating that while RS & W may be doing the detail work, the trustee and his firm remain in a supervisory role. In addition, the appellee's brief in the present appeal was prepared by the trustee and his firm. Further, as DBI has pointed out, the trustee will have to review any liquidation plan proposed by the debtor under section 1106(a)(3). Indeed, as outlined at oral argument on the present motion, the trustee even keeps a hand in the LBO Litigation.

Each of these types of work demonstrates the very real difference in the roles assumed by the trustee and his firm on the one hand and RS & W on the other. The trustee remains as the catch-all, covering matters for which RS & W was not specifically designated counsel, and umbrella, supervising, coordinating, and strategizing regarding the course of the bankruptcy; RS & W simply does the leg-work on certain specified, albeit important, matters. Thus, as the bankruptcy judge found, RS & W is not conducting the case, does not hold an interest adverse to the estate with respect to the matter for which it is employed, and is employed in the best interest of the estate. Section 327(e) having been properly applied and no clear factual error having been committed, the decision of the bankruptcy court is affirmed.

## CONCLUSION

For the reasons stated above, the order of the bankruptcy court is affirmed.