W. GARY DOLL *et al.*, Plaintiffs-Appellants, v. DAVID A. BERNARD *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—90—3452

Opinion filed August 16, 1991.

Beeler, Schad & Diamon, P.C., Fishman & Merrick, P.C., and Joyce & Kubasiak, all of Chicago (Stephen B. Diamon, Lawrence W. Schad, David J. Philipps, William H. London, David A. Genelly, and Ed T. Joyce, of counsel), for appellants.

Sachnoff & Weaver, Ltd., of Chicago (Jack L. Block and Joan L. Feder, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, W. Gary Doll and Richard C. Swanson, filed this action seeking rescission of the sale of limited partnership interests against defendants David A. Bernard as general partner, Corsicana Plaza Associates and Royal Plaza Associates. Plaintiffs' interests were sold by an unregistered broker in violation of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1985, ch. 121½, par. 137.8) (Act). Plaintiffs' three-count complaint sought damages for alleged violations of the Act, breach of fiduciary duty, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*) (Consumer Fraud Act). The court granted defendants' motion to dismiss count I because the action was not commenced within the period of the statute of limitations, and counts II and III for failure to state a cause of action. Plaintiffs appeal the dismissal of all three counts.

The relevant facts are as follows. Limited partnership interests in Corsicana Plaza and Royal Plaza were offered to plaintiffs during 1985 and 1986 by Earl Dean Gordon, Kenneth F. Boula and two companies owned and controlled by Gordon and Boula, KFB Securities, Inc., and Financial Concepts, Ltd. (collectively referred to as Gordon-Boula). Defendants, through their sponsoring company, Concord Assets Group, Inc. (Concord), participated in and financed sales seminars coordinated and promoted by Gordon-Boula. (Gordon-Boula is not a party in this action.)

On November 11, 1985, Doll submitted to Gordon-Boula subscription papers for a limited partnership interest in the amount of $76,950 in Corsicana Plaza. On November 19, 1985, Swanson submit-

ted his subscription papers for a limited partnership interest in the amount of $76,825 in Royal Plaza Associates. Plaintiffs contracted to buy these interests through a series of installment notes. In December 1985, plaintiffs were approved and accepted as limited partners in their respective partnerships, and made their first installment payments in January 1986. (To date, Doll has paid $56,500 and Swanson has paid $56,750 toward their interests.)

In July 1986, the Illinois Secretary of State brought an action against Gordon-Boula for illegally selling interests in another real estate limited partnership sponsored by Concord. Defendants ceased doing business with Gordon-Boula after learning that it was not licensed to act as dealers or salespersons in accordance with section 8 of the Act; however, defendants did not notify plaintiffs about Gordon-Boula's status as an unregistered broker.

In May 1989 plaintiffs learned that Gordon-Boula was unregistered. On June 1, 1989, Doll gave notice pursuant to section 13 of the Act of its election to rescind, followed on September 5, 1989, by Swanson's notice to rescind.

On March 6, 1990, plaintiff filed this three-count complaint against defendants. In count I, plaintiffs sought rescission of their investments based upon defendants' failure to inform plaintiffs that Gordon-Boula was an unregistered broker. Counts II and III sought damages for breach of fiduciary duty and alleged violations of the Consumer Fraud Act, respectively. The trial court granted defendants' motion to dismiss all three counts.

On appeal, plaintiffs argue that their securities claims were filed within the statutory time period because defendants never made an absolute transfer of rights. Plaintiffs further argue that defendants' failure to disclose the illegal nature of the sales constituted a breach of fiduciary duty, and nondisclosure of their use of an unregistered broker violated the Consumer Fraud Act.

We turn first to plaintiffs' contention that a sale for purposes of the Act has not occurred because defendants never made an absolute transfer of the rights to plaintiffs. Plaintiffs maintain that they never received an absolute and unqualified right in the subject securities because defendants held a security interest to secure the payment of future promissory notes and controlled the transferability of the securities.

■ The trial court concluded that count I was barred by the statute of limitations, as it was not commenced until four years after the date of sale. Section 13 of the Act provides in relevant part:

"D. No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the *date of sale* \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 121½, par. 137.13(D).

Relying upon *Frantzve v. Joseph* (1986), 150 Ill. App. 3d 850, 502 N.E.2d 396, the trial court found that plaintiffs were entitled to all rights and benefits of the limited partnerships in January 1986, the time they were accepted as limited partners and made their first payments.

We are unpersuaded by plaintiffs' argument that defendants never made an absolute transfer of rights. The contract provides that subscriber is

"*granting* the Partnership a security interest in his Unit to secure the payment of future installments of his capital contribution and his related promissory notes." (Emphasis added.)

The security interest that plaintiffs granted to seller was for the express purpose of securing financing on the promissory notes. As such, plaintiffs' grant of the security interest cannot be construed as precluding defendants from making an absolute transfer of rights.

■ Plaintiffs' claim that an absolute transfer of rights had not occurred because the general partners' consent was required for the sale or assignment of the limited partnership interests fares no better. A limited partner whose property interest in the partnership originates with a general partner may be regarded as the true owner of that property, notwithstanding that the general partner retains substantial powers over it, provided that the powers retained are such as are normally incident to that type of partnership and the agreement does not contain substantial restrictions. (*Leeb v. Jarecki* (N.D. Ill. 1957), 156 F. Supp. 6.) Plaintiffs do not contend, nor do we find after review of the proviso at issue, that it contains restrictions that can be characterized as substantial or unduly burdensome.

■ Illinois courts have interpreted the "date of sale" for purposes of determining the date upon which the limitations period is triggered for claims under the Act. (See *Frantzve v. Joseph* (1986), 150 Ill. App. 3d 850; *James v. Erlinder Manufacturing Co.* (1979), 80 Ill. App. 3d 4, 398 N.E.2d 1225; *Levine v. Unruh* (1968), 99 Ill. App. 2d 94, 240 N.E.2d 521; *Silverman v. Chicago Ramada Inn, Inc.* (1965), 63 Ill. App. 2d 96, 211 N.E.2d 596.) In order to determine the date of sale, the court has focused upon the date on which the plaintiff acquires a legal interest in the securities and the date when the

rights of the parties to the transaction are fixed. *Frantzve v. Joseph*, 150 Ill. App. 3d at 852, 502 N.E.2d at 398.

■■ Both parties signed their subscription agreements in November 1985 and were accepted into the limited partnership in December 1985. The payment of the first installment of the purchase price, which provided consideration for the subscription agreement, occurred during January 1986. As members of a limited partnership, plaintiffs acquired a legal interest at that time which entitled them to share in the profits and losses of the partnership. *Allen v. Amber Manor Apartments Partnership* (1981), 95 Ill. App. 3d 541, 420 N.E.2d 440.

The complaint was not filed until March 6, 1990, well beyond the three-year statutory period of limitations set forth in section 13 of the Act. Thus, we conclude that the judge properly ruled that count I is barred by the statute of limitations.

Plaintiffs next argue that defendants owed a fiduciary duty to disclose any material information with potential contingent liability for claims of rescission to the limited partners. Plaintiffs contend that any other purchasers of the limited partnerships through the unregistered broker had a right to rescind those agreements. The trial court dismissed count II, finding that plaintiffs did not specifically allege a breach of fiduciary duty by the defendants, nor did they allege that as a general partner, defendants had a duty to disclose information unrelated to the management of the limited partnership investment.

■■ Plaintiffs cite *Labovitz v. Dolan* (1989), 189 Ill. App. 3d 403, 545 N.E.2d 304, for the proposition that the fiduciary duty owed by a general partner to a limited partner necessarily encompasses the duty of exercising good faith, honesty, and fairness in his dealings with them and the funds of the partnership. The fiduciary relationship embraces all matters reasonably relating to the partnership. (*Bakalis v. Bressler* (1953), 1 Ill. 2d 72, 79, 115 N.E.2d 323, 327.) A limited partnership is in the nature of an investment; thus, when the limited partner makes a contribution, he is placing that amount at risk. *Kramer v. McDonald's System, Inc.* (1979), 77 Ill. 2d 323, 396 N.E.2d 504.

■■ Defendants were unaware of Gordon-Boula's status as an unregistered broker at the time plaintiffs purchased their limited partnership interests. Upon learning that the State had brought an action against Gordon-Boula for illegally selling securities in another venture in 1986, defendants immediately ceased doing business with them. Thus, defendants acted properly and in the best interests of the limited partners when they discontinued using Gordon-Boula as their broker. There was no showing that defendants did not meet their duty of using good faith, honesty and fairness in their dealings with plaintiffs.

The inquiry on appeal from a section 2—615 (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) motion to strike and dismiss is limited to accepting all well-pleaded facts and reasonable inferences that could be drawn therefrom, and to examine whether a cause of action was stated. (*Moreno v. Joe Perillo Pontiac, Inc.* (1983), 112 Ill. App. 3d 670, 445 N.E.2d 1184.) Upon review of the facts in this case as set forth in the pleadings, we agree with the trial court's determination that plaintiffs have not demonstrated a breach of fiduciary duty on the part of defendants.

Plaintiffs' final argument posits that defendants misrepresented that Gordon-Boula was registered to sell limited partnership interests in Corsicana Plaza and Royal Plaza. According to plaintiffs, this misrepresentation of Gordon-Boula's registration status was a material factor in the sale of the subject securities and constitutes a violation of the Consumer Fraud Act. Plaintiffs again argue that as a result of defendants' material misrepresentations, contingent liabilities arose because plaintiffs and other investors could demand rescission of their agreements.

■ While plaintiffs correctly assert that a plaintiff can recover under the Consumer Fraud Act for innocent misrepresentations, such misrepresentations must be material. (*Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.) At the outset, we note that plaintiffs do not allege that the securities were fraudulent, or that their nature or value was misrepresented.

It is undisputed that at the time the sale was made, defendants were unaware of Gordon-Boula's status as an unregistered broker. The record is devoid of any evidence that defendants attempted to trick plaintiffs or conduct any secret dealings in order to entice them into becoming limited partners. We find that plaintiffs' allegations concerning potential contingent liabilities arising out of a purchaser's ability to rescind the agreement do not rise to the level of a material misrepresentation. Accordingly, plaintiffs' claim for violation of the Consumer Fraud Act was properly dismissed by the court.

■ Finally, we find that plaintiffs have not sufficiently established in counts II and III the nature of the damages sustained as a result of defendants' failure to disclose Gordon-Boula's status as an unregistered broker, other than its nebulous assertion that this investment has declined in value and/or performed below the rate of return available to plaintiffs in other lawful investments. The purpose of compensatory damages is to compensate the plaintiff for damages sustained, and not to punish the defendant or to award a windfall to the plaintiff. (*McLane v. Russell* (1989), 131 Ill. 2d 509, 546 N.E.2d 499.) Since

damages cannot be awarded on the basis of speculation or conjecture, plaintiffs' claims on these two counts must fail. *Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 443 N.E.2d 36.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and LaPORTA, J., concur.