R. RICHARD BASTIAN III *et al.*, Plaintiffs-Appellants, v. PETREN RESOURCES CORPORATION *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—92—4449

Opinion filed February 24, 1995.

Nisen & Elliott, of Chicago (Michael H. Moirano, Patricia S. Spratt, and Daniel P. Dawson, of counsel), for appellants.

O'Connor & Kelly, of Chicago (William J. O'Connor and Roger J. Kelly, of counsel), for appellees Petren Resources Corporation, Faestel Investments, Inc., and David J. Faestel.

Novack & Macy, of Chicago (Stephen Novack and Donald Tarkington, of counsel), for appellee McDermott, Will & Emery.

JUSTICE ZWICK delivered the opinion of the court:[1]

This is an appeal from the trial court's dismissal of plaintiffs' second amended complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). Plaintiffs' appeal is brought pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

Plaintiffs were purchasers of oil and gas limited partnership interests (the partnerships) and originally brought suit against the defendants in the United States District Court for the Northern District of Illinois. (See *Bastian v. Petren Resources Corp.* (N.D. Ill.

---

[1]While Justice Zwick did not serve as a member of the original panel which heard oral arguments in this case, he has read the briefs of the parties, listened to the tapes of oral argument and has otherwise fully participated in the disposition of this case.

1988), 681 F. Supp. 530.) In their suit, plaintiffs alleged both Federal and State law claims. The district court dismissed the plaintiffs' Federal claims but specifically declined to consider plaintiffs' State claims. (*Bastian*, 681 F. Supp. at 538.) Plaintiffs subsequently brought their State-law claims in the circuit court of Cook County, which also dismissed the case. Like the Federal district court, the circuit court determined that the plaintiffs had failed to allege a sufficient causal nexus between defendants' alleged misconduct and the financial failure of the partnerships. The court allowed the plaintiffs the opportunity to amend their complaint by filing a second amended complaint, but the court later dismissed the suit with prejudice after finding plaintiffs' amended allegations also to be insufficient to state a cause of action.

■ A section 2—615 motion attacks the legal sufficiency of the complaint by asserting that it fails to state a cause of action upon which relief can be granted. It is well settled that when an appellate court reviews a section 2—615 motion, it must accept as true all well-pleaded facts and must draw from those facts all reasonable inferences which may be deemed favorable to the nonmoving party. *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504-05, 565 N.E.2d 654, 657; *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.* (1991), 218 Ill. App. 3d 383, 388, 577 N.E.2d 1344.

Plaintiffs' second amended complaint alleges that the defendants fraudulently induced them to make investments in two oil and gas exploration partnerships by material misrepresentations and omissions contained in the partnerships' offering memoranda. Count I of the second amended complaint seeks damages under the provisions of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1992)) from the promoters of the partnerships. Count II seeks damages under theories of breach of fiduciary duty against both the promoters of the partnerships and from the law firm of McDermott, Will & Emery (McDermott). McDermott prepared the offering memoranda used by the other defendants to solicit plaintiffs' investments. Count III is based upon common law fraud and is against the promoters of the partnerships. Count IV is a legal malpractice action against McDermott.

Among the allegations contained in their complaint, plaintiffs claim that the defendants: (1) fraudulently concealed pending litigation against the management of the partnerships; (2) failed to prepare audited financial statements as promised in the offering memoranda; (3) indicated that McDermott was counsel to the partnership when, in fact, McDermott served only as counsel to the managers of the partnership; (4) failed to disclose that one of the general partners of

the oil and gas partnerships was nothing more than an "undercapitalized shell corporation"; and (5) obtained financing from Penn Square Bank when defendants knew or should have known it was about to fail. Plaintiffs also argue that they were falsely led to believe the partnership would be managed by an experienced, competent and qualified management team. Plaintiffs claim that had the defendants been truthful in describing the dishonesty and incompetence of the partnerships' management, they would not have invested in the ventures.

Defendants respond, even if the allegations of the complaint are taken as true, that plaintiffs have failed to allege a legally sufficient causal connection between their acts and the ultimate failure of the oil and gas partnerships. They argue that none of the substantive claims in the complaint relate to the experience, competency or qualifications of the management team at the time the memoranda were circulated. They also point out that nearly identical arguments were raised and argued unsuccessfully in both the Federal district court and the Seventh Circuit Court of Appeals with regard to the causation necessary to bring RICO and Federal securities violations claims. See *Bastian v. Petren Resources Corp.* (1988 N.D. Ill.), 699 F. Supp. 161, *aff'd* (7th Cir. 1990), 892 F.2d 680.

In *Rosengard v. McDonald* (1990), 205 Ill. App. 3d 208, 562 N.E.2d 583, a plaintiff/investor claimed that negligence by a defendant/broker resulted in the plaintiff being approved as a loan guarantor by a lender. Had the defendant accurately filled out certain paperwork, plaintiff claimed, plaintiff would not have been approved as a guarantor by the lender and would have thereby avoided suffering any financial loss. Like the defendants in this case, the defendant in *Rosengard* argued that the plaintiff's complaint failed to allege the necessary causal connection between the defendant's negligence and the plaintiff's alleged injury. In resolving the issue, the court agreed that the plaintiffs' complaint was defective, noting that a distinction can be made between "the proximate cause of an injury" and a "condition which provides an opportunity for the causal agency to act." (*Rosengard*, 205 Ill. App. 3d at 216.) The court discussed the rule applied in Federal litigation requiring a plaintiff to allege both "transaction causation" and "loss causation" in order to state a cause of action for securities fraud. (*Rosengard*, 205 Ill. App. 3d at 216.) The former "proves that defendant's conduct caused plaintiff to enter into the transaction" while the latter " 'touches upon the reasons for the investment's decline in value.' " (*Rosengard*, 205 Ill. App. 3d at 216, quoting *LHLC Corp. v. Cluett, Peabody & Co.* (7th Cir. 1988), 842 F.2d 928, 931.) The court stated: "[w]here plaintiff is induced to purchase

securities in reliance on conduct which, however deceitful, is immaterial to the operative reasons for the pecuniary loss, he has failed to prove the requisite loss causation." *Rosengard*, 205 Ill. App. 3d at 216, citing *Currie v. Cayman Resources Corp.* (11th Cir. 1988), 835 F.2d 780, 785.

In *Bastian v. Petren Resources Corp.* (7th Cir. 1990), 892 F.2d 680, the Seventh Circuit Court of Appeals determined that "loss causation" was simply another name for the common law fraud rule of "proximate cause." (*Bastian*, 892 F.2d at 683.) The *Bastian* court determined that the plaintiffs now before this court had not, in their Federal complaint at least, sufficiently connected the alleged misconduct of the defendants to their loss. In analyzing the same issue as is now before this court, the seventh circuit court wrote:

> "The plaintiffs alleged that they invested in the defendants'
> limited partnerships because of the defendants' misrepresenta-
> tions, and that their investment was wiped out. But they suggest
> no reason *why* the investment was wiped out. They have alleged
> the cause of their entering into the transaction in which they lost
> money but not the cause of the transaction's turning out to be a
> losing one." (Emphasis in original.) *Bastian*, 892 F.2d at 684.

For support of their position, defendants rely principally upon three Illinois Appellate Court decisions, *Spiegel v. Sharp Electronics Corp.* (1984), 125 Ill. App. 3d 897, 466 N.E.2d 1040, *Doll v. Bernard* (1991), 218 Ill. App. 3d 719, 578 N.E.2d 1053, and *Meenehan v. Rosenfield* (1925), 236 Ill. App. 4. In each of these cases, the plaintiff's allegations or proof of fraud were found to be insufficiently connected to the conduct of the defendants.

In *Spiegel*, the plaintiff alleged that defendant sold it a malfunctioning photocopier, making false representations at the time of sale that the defendant was a "factory authorized Sharp dealer." (*Spiegel*, 125 Ill. App. 3d at 901.) The court noted, to constitute actionable fraud, the plaintiff was required to have alleged that this specific misrepresentation somehow "caused" the plaintiff's injury. (*Spiegel*, 125 Ill. App. 3d at 901.) The failure of the complaint to explain how the status of the defendant as an authorized dealer would have changed the copier's poor performance rendered the complaint defective. (*Spiegel*, 125 Ill. App. 3d at 901.) The court affirmed the dismissal of plaintiff's complaint.

In *Doll v. Bernard* (1991), 218 Ill. App. 3d 719, 578 N.E.2d 1073, the court affirmed the trial court's dismissal of the plaintiff's cause of action under section 2—615 of the Code of Civil Procedure. The court noted that the defendants' claims—that they had been sold limited partnerships by an unregistered broker—had not been sufficiently

connected with the failure of their investment to constitute an actionable claim. Because the status of the broker was not sufficiently tied to the decline of the investment, the court affirmed the trial court's dismissal of the plaintiff's claims. See *Doll*, 218 Ill. App. 3d at 725-26.

Finally, in *Meenehan v. Rosenfield* (1925), 236 Ill. App. 4, a purchaser of commercial ovens brought suit against defendants for falsely representing the successful status of their company and the special nature of their products. (*Meenehan*, 236 Ill. App. at 9.) In selling the ovens to the plaintiff, the defendants had falsely represented that they had invested a million dollars in their business, that the company owned and controlled the patents for the ovens, that it owned the factory where the ovens were made and that the ovens were being sold to the defendants at cost. (*Meenehan*, 236 Ill. App. at 12.) The trial court entered judgment in favor of the plaintiff, but the appellate court reversed. The appellate court noted that the failure of the plaintiff's business could have been the result of any number of causative factors. The trial court's judgment was reversed because the plaintiff had failed to offer any evidence that its damages were the "clear and necessary consequences of the tort." *Meenehan*, 236 Ill. App. at 10.

Plaintiffs concede that it is generally incumbent upon an investor claiming fraud to allege a specific and sufficient causal nexus between the acts of the defendants and the failure of the venture. They rely, however, upon two cases for the proposition that an investor may recover the value of an initial investment when tortiously induced to invest by false information, *Tone v. Halsey, Stuart & Co.* (1936), 286 Ill. App. 169, 3 N.E.2d 142, and *Goodwin v. Wilbur* (1902), 104 Ill. App. 45. In our view, however, both cases are distinguishable.

In *Tone*, a jury heard evidence that the defendant presented the plaintiff with financial statements for two companies in which the plaintiff ultimately invested. The financial statements indicated that the corporations were significantly healthier than they actually were and the corporations subsequently foundered. Similarly, in *Goodwin*, the trial court heard evidence that the defendant had agreed to invest in a corporation only after having been assured that the corporation was fully subscribed. In fact, the corporation was not fully subscribed and had significantly less capital than the plaintiff had been told. It subsequently failed.

In both the *Tone* and *Goodwin* cases, the defendants made specific representations about the financial value of the investments which necessarily resulted in the plaintiffs receiving less than they were

told they would receive. The type of conclusory allegations made in this case, even if taken as true, do not establish that the investments the plaintiffs purchased were less valuable than they would have been had the offering memoranda been accurate or had the defendants acted honestly and competently. Unlike the situation in *Tone* and *Goodwin*, alleged misrepresentations and omissions by the defendants in this case are not obviously tied to the failure of the partnerships.

■ Although the plaintiffs claim that the enterprise in which they invested was managed by incompetent and dishonest managers, they have consistently refused to allege, when given the opportunity to do so, that the partnerships would have fared better had the managers been competent and honest. The exploration for oil and gas is inherently risky and subject to the vagaries of both nature and the marketplace. Plaintiffs knew this and knew also that their large anticipated profits were a direct function of the substantial risk they were undertaking. Because the amended complaint fails to allege the necessary causal connection between defendants' alleged misconduct and the ultimate failure of the partnerships, we find the trial court properly granted defendants' section 2—615 motion. The fact that the pleadings of the complaint are liberally construed does not lessen the obligation of the plaintiff to set out facts necessary for recovery under the theories asserted in the complaint. *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 516, 513 N.E.2d 387.

■ As an additional basis for affirming the trial court, defendant McDermott has argued that the plaintiffs' complaint is properly dismissed because McDermott owed no duty to the plaintiff. An attorney owes a duty to a nonclient only in the most limited circumstances. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96.) Plaintiffs claim that McDermott drafted the offering memoranda to lull investors into believing that McDermott was representing the interests of the partnership and all of its partners. They point out that the memoranda indicated McDermott was acting as "counsel to the partnership." At the time the memoranda were delivered to the plaintiffs, however, plaintiffs certainly knew they were not members of the partnerships. If plaintiffs believed McDermott was representing their interests at this time, this belief was unreasonable and cannot be the basis for an equitable type of action against McDermott founded upon breach of a fiduciary or confidential relationship. *Gold v. Vasileff* (1987), 160 Ill. App. 3d 125, 128, 513 N.E.2d 446.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McNAMARA, P.J., and RAKOWSKI, J., concur.