9 February 2000

NO. 4-98-0199

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

MARK OLIVEIRA,                          )   Appeal from

Plaintiff-Appellant,          )   Circuit Court of

v.                            )   Champaign County

AMOCO OIL COMPANY, a Corporation,       )   No. 96L325

Defendant-Appellee.           )

                                        )   Honorable

                                        )   George S. Miller,

                                        )   Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Mark Oliveira, appeals the dismissal of his complaint based on the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 
et
 
seq
. (West 1996)) against de­fen­dant, Amoco Oil Com­pa­ny, and also ap­peals from the deni­al of class cer­tif­i­ca­tion­.  Plain­tiff contends (1) the trial court erred in dismissing his complaint be­cause it failed to state a cause of action by finding he failed to al­lege proximate cause under the Act; and (2) the trial court erred and abused its dis­cre­tion in denying class certifica­tion to his cause of action by ruling the Act did not apply to consumers outside Illinois, by not finding Illinois law applied­, and failing to find common issues of fact or law predominated.  We affirm in part and reverse in part.

I. BACKGROUND

Plaintiff is an Illinois consumer who first brought a  complaint against defen­dant in No­vem­ber 1996 seek­ing cer­tifi­ca

tion as a class action on be­half of a nation­wide class of all purchases of "Amoco Sil­ver and/or Amoco Ulti­mate gasoline" (Amoco pre­mium gasolines).  This ­complaint alleged defendant's ad­ver­

tise­ments for its premium gasolines were false and plain­tiff and others had pur­chased those premium brands be­cause of the ads.  Defendant as­serted four caus­es of action:  (1) breach of express warranty; (2) breach of implied warranty; (3) fraudulent misrep­

re­sentation; and (4) a violation of the Act.

At an evidentiary hearing in March 1997, the trial court denied class cer­tification because, whether Illinois' or another state's law was applicable, the cause of action based upon reli­ance on adver­tisements required separate factual find

ings as to each class member's reasons for purchasing gasoline.  

Plaintiff filed an amended complaint in May 1997, in which he dropped all claims except consumer fraud under the Act.  The amended complaint alleges plaintiff and the class he claims to represent have a claim under the Act and were dam­aged simply by purchasing Amoco premium gasolines regardless of wheth­er they saw the advertisements plaintiff alleges were mis­representations.  Plaintiff requested certification of a class he defined as "[a]ll retail purchasers in the United States who pur­chased Amoco Ulti

mate and/or Amoco Silver gasoline during the class period, Novem

ber 6, 1991, through January 2, 1996."

The amended complaint alleged defendant began a multi-

state advertising campaign on November 6, 1991, which falsely represented: 

"(A) Amoco Ultimate gasoline is superior 

to all other brands of premium gaso­line with 

respect to engine performance or environmental 

bene­fits because it is refined more than all 

       other such brands;

(B) The clear color of Amoco Ultimate 

gasoline demonstrates the superior engine per-

formance and environmental benefits Amoco 

Ultimate provides compared to other premium 

brands of gasolines that are not clear in 

color;

(C)  A single tankful of Amoco Silver or

Ultimate gasoline will make dirty or clogged 

fuel injectors clean;

(D)  Amoco Silver or Ultimate gasoline 

provides superior fuel injector cleaning 

compared to other brands of gasoline;

and

(E)  Automobiles driven more than 15,000 

miles with regular gasoline generally suffer 

from lost engine power or acceleration which 

will be restored by the higher octane of 

Amoco Silver gasoline."

The complaint alleges defendant knew these statements were un

true.  While not included as an allega­tion in the complaint, the end date chosen for the class period, Janu­ary 2, 1996, was the effective date of a consent decree between defendant and the Federal Trade Commis­sion (FTC) as a result of which de­fen­dant stopped its advertising.  The consent decree settled an action filed against defendant by the FTC based upon the same alleged deceptive advertising campaign.  

Plaintiff alleges the result of defendant's deceptive advertising campaign was to increase demand for its premium gaso­

line thereby enabling it to command an inflated and otherwise unsustainable price for the premium gaso­lines that all consumers of the gasoline paid whether or not they had relied upon or seen the advertising campaign­.  Thus, plaintiff argues all consumers who purchased defendant's premium gasolines during the class period were damaged by defendant's misrepre­sentations in its advertising campaign.

In support of his motion to certify a class action, plaintiff submitted the affidavit of Dr. William R. Latham III,  professor of economics at the University of Delaware, and Dr. James E. Haefner, professor of advertising at the University of Illi­nois.  Dr. Haefner's affidavit had to do with the effects of advertising on consumer demand.

In Dr. Latham's ini­tial ­­and sec­ond affi­da­vit­­, he assumed­ (1) defendant's premium gasoline did not pro­vide the bene­fits touted by its ad­vertising campaign and (2) the ad cam

paign had an effect on consumers and influenced their choices.  He then stat­ed, due to the increased demand cre­ated by the adver­

tising, de­fendant was able to charge a higher rate for its pre

mium gaso­lines than without the adver­tis­ing.  This higher rate was paid by all consumers ­and not just those who heard and relied upon defendant's advertis­ing.  Dr. Latham stated it can be deter

mined, using econometric analysis, the precise extent of the inflated price attributable to defendant's adver­tising. 

Defendant filed a motion to strike the affidavits of both Latham and Haefner.  Defendant argued Latham's opinions were premised on assumptions contrary to undisputed facts; his theory of liability was novel and contrary to Illinois law; and his opinions were speculative, unsupported by evi­dence and lacking foundation for admissibility.  Defendant pro­vided affidavits from experts of its own that criticized Latham's theories as not sup

ported by the facts, which showed that during the class period demand for defendant's premium gasolines actually decreased, as did prices charged.  Defendant argued Latham's theory did not comply with the requirements of the Act and was both (1) too speculative and (2) an example of "fraud on the market" theory, which has been adopted only in securities fraud cases and not in cases of consumer fraud.

As Dr. Latham's second affidavit pointed out, how­ever, he was not contending demand for defendant's premium gaso­line actually increased as compared to previous time periods nor that the prices it charged increased from previous periods.  Instead, Latham's contention is defendant's apparently deceptive advertis

ing kept demand and prices higher during the class period than they would have been otherwise.  He does not disagree other fac

tors also influence demand and prices charged but maintains an econometric analysis can be designed to isolate the effect of defendant's advertising on the actual demand levels and prices during the relevant time period.

Defendant also filed motions to dismiss plaintiff's complaint pursuant to section 2-615 of the Civil Practice Law (Law) (735 ILCS 5/2-615 (West 1996)) and ­section 2-619 of the same Law.  Defendant also contested plaintiff's second motion to cer­tify the class.  

The trial court denied defendant's motion to strike the affidavits of Drs. Latham and Haefner and the section 2-619 mo

tion.  The court found plain­tiff had no cause as to Amoco Sil­ver gasoline because he did not actually purchase it but ­­­stated the case was not being dismissed on that ground.  Instead, the trial court grant­ed defendant's section 2-615 motion because plain

tiff's com­plaint did not plead proximate causation ade­quate­ly under the Act.  The court rejected the mar­ket­ing theo­ry plead­ed by plain­tiff, 
i.e.
, defendant's mis­leading adver­tising caused inflated prices for its gasoline­­.  The trial court also denied certification of a class action stating again it rejected the "marketing scheme theo­ry" proposed by plaintiff.  The court noted a lack of predominance of common issues of fact because of the variables that would cause a consumer to purchase gasoline, in

cluding whether a consum­er be­lieved defendant's advertising claims.  The court also found no common questions of law existed because the Act did not extend to consumers outside Illinois.  This appeal followed.

II. ANALYSIS

A. Motion To Strike Portions of Reply Brief

We first address defendant's motion to strike portions of plaintiff's reply brief.  Defendant contends in its opening brief plaintiff claimed the trial court's denial of class cer­

tification and dismissal of the complaint were erroneous for three reasons.  However, defendant argues plaintiff, by reply brief, raised several 
arguments
 origi­nally raised in the trial court but not in plaintiff's opening brief.  Defendant notes Su­

preme Court Rule 341(e)(7) provides any points not argued in an appellant's opening brief "are waived and shall not be raised in the reply brief."  155 Ill. 2d R. 341(e)(7).  Defendant argues that by raising these new points for the first time in his reply brief plaintiff is attempting to preclude it from responding to those arguments.

We believe the argu­ments raised by plaintiff in his reply brief were in response to arguments raised by defendant in its opening brief.  Defen­dant was not precluded from responding to arguments raised only in reply but actually invited them itself.  Supreme Court Rule 341(g) pro­vides an appellant may re

spond to arguments pre­sented in the appellee's brief.  155 Ill. 2d R. 341(g).  An ap­pellee may argue any point supported by the record but an appel­lant is under no obligation to anticipate every argument an ap­pellee might raise and address it in his opening brief.  
Rome v. Commonwealth Edison Co.
, 81 Ill. App. 3d 776, 780, 401 N.E.2d 1032, 1034-35 (1980).  Therefore, defen

dant's motion to dismiss portions of plaintiff's reply brief is denied. 

B. Propriety of the Section 2-615 Dismissal

Plaintiff appeals the dismissal of his cause of action and the denial of the class certification.  Plaintiff argues first, the trial court erred in finding he did not state a cause of action under the Act.  On appeal from a motion to dis­miss a complaint under section 2-615, the standard of review is whether the complaint alleged sufficient facts which, if proved, would entitle the plaintiff to relief.  
Charles v. Seigfried
, 165 Ill. 2d 482, 485-86, 651 N.E.2d 154, 156 (1995).  

Section 2 of the Act delineates an unlawful prac­tice as follows:

"Unfair methods of competition and unfair 

or deceptive acts or practices, including but 

not limited to the use or employment of any 

deception, fraud, false pretense, false 

promise, misrepresentation or the concealment, 

suppression or omission of any material fact, 

with intent that others rely upon the conceal-

ment, suppression or omission of such material 

fact, *** in the conduct of any trade or 

commerce are hereby declared unlawful whether 

any person has in fact been misled, deceived 

or damaged thereby."  815 ILCS 505/2 (West 1996).

An action for damages under the Act may be brought pursuant to section 10a(a).  "Any person who suffers actual dam

age as a result of a violation of this Act committed by any other person may bring an action against such person."  815 ILCS 505/10a(a) (West 1996).  The definition of "person" under the Act includes a corporation, company, or other business entity.  815 ILCS 505/1(c) (West 1996).  Thus, defendant is included as a person who could commit a viola­tion of the Act.

The Act has been construed liberally to give effect to the legislative goals behind its enactment.  
Eshaghi v. Hanley Dawson Cadillac Co.
, 214 Ill. App. 3d 995, 1001-02, 574 N.E.2d 760, 764 (1991).  The Act's policy is to give broader protection than common law fraud by prohibiting any "deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment *** in the conduct of any trade or commerce."  
815 ILCS 505/2 (West 1996); 
Eshaghi
, 214 Ill. App. 3d at 1001-02, 574 N.E.2d at 764.  The stan­dard of proof for a violation of the Act is lenient as it does not re­quire "any per

son has in fact been misled, deceived or damaged thereby."   815 ILCS 505/2 (West 1996); 
Eshaghi
, 214 Ill. App. 3d at 1002, 574 N.E.2d at 764.

A cause of action under section 2 of the Act has three elements:  (1) a deceptive act or practice by the defendant, (2) the defendant's intent that plaintiff rely on the deception, and (3) the deception occurred during a course of conduct involving trade or commerce.  
Zekman v. Direct American Marketers, Inc.
, 182 Ill. 2d 359, 373, 695 N.E.2d 853, 860 (1998); 
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1996); 
Martin v. Heinold Commodities, Inc.
, 163 Ill. 2d 33, 75, 643 N.E.2d 734, 754 (1994) (hereinafter 
Martin II
).  Although the defendant's intent that its deception be relied on is an element of the offense, the Supreme Court of Illinois has stated no actu­

al reli­ance is re­quired to state a cause of action under the Act.  
Connick
, 174 Ill. 2d at 501, 675 N.E.2d at 593; 
Martin II
, 163 Ill. 2d at 76, 643 N.E.2d at 754; 
Siegel v. Levy Organiza­tion Devel­opment Co.
, 153 Ill. 2d 534, 542, 607 N.E.2d 194, 198 (1992).  
Duran v. Leslie Olds­mo­bile, Inc.
, 229 Ill. App. 3d 1032, 1041, 594 N.E.2d 1355, 1362 (1992), holds reli­ance is required for a private cause of action as opposed to those brought under the Act by the Attorney General
.  In support of its ruling, how

ever, the 
Duran
 court 
re­lied on lan­guage in sec­tion 10a of the Act that deals with proximate causation:  "Any person who suffers damage as a result of a violation of this Act *** may bring an action ***."  Ill. Rev. Stat. 1989, ch. 121 1/2, par. 270a(a) (now 815 ILCS 505/10a(a) (West 1996)).  

While reliance is not required under the Act, a plain­

tiff must demonstrate the defendant's consumer fraud proximately caused his injuries.  
Zekman
, 182 Ill. 2d at 373, 695 N.E.2d at 860-61; 
Connick
, 174 Ill. 2d at 501, 675 N.E.2d at 593.  The required allegation of proximate causation has been termed mini­

mal, however, as that determination is best left to the trier of fact.  
Connick
, 174 Ill. 2d at 504, 675 N.E.2d at 595.    

Defendant contends Illinois law under the Act requires a plain­tiff to allege two components of causation:  (1)"direct" or "proximate" causation and (2) "but for" or "transactional" causa­tion.  These two types of causation apparently originated in federal securities fraud cases.  See 
Martin II
, 163 Ill. 2d at 60, 68-69, 643 N.E.2d at 747, 751; 
Adler v. William Blair & Co.
, 271 Ill. App. 3d 117, 128-29, 648 N.E.2d 226, 234 (1995); 
Bas­tian v. Petren Re­sourc­es Corp.
, 271 Ill. App. 3d 232, 235, 648 N.E.2d 165, 167 (1995).  The court in 
Bas­tian
 defined "trans­action cau­

sation" as occur­ring when defendant's conduct caused plain­tiff to enter into the trans­action and "loss causation" as the reasons for the transaction's (investment's) decline in value or the proximate cause of plaintiff's loss.  
Bastian
, 271 Ill. App. 3d at 235, 648 N.E.2d at 167.    

These two types of causation are only cited in securi­

ties fraud cases and not in 
Zekman
 and 
Connick
, where only the issue of proximate cause is discussed as required under the Act.  Defendant's argument concerning the necessity of "but for" causa

tion appears to be a reference to reliance, which the supreme court has repeatedly stated is not required under the Act.  Reli

ance was an important part of a common law fraud cause of action, but the elements of common law fraud need not be proved to re

cover under the Act as the definition of fraudulent practice is in the Act itself.  
People ex rel. Fahner v. American Buyers Club, Inc.
, 115 Ill. App. 3d 759, 761, 450 N.E.2d 904, 906 (1983).

Since "but for" causation is not necessary because actual reliance is not necessary, the question under plaintiff's theory becomes whether defendant made misleading statements in its advertising that led to an increase in demand and inflated pric­es that were paid by all.  Defendant ­­­argues, even if the advertising was misleading, it did not proximately cause any damage to plaintiff.  Defendant contends it provided affi­davits to counter those supplied by plaintiff and which provide evi­dence the overall demand for its premium gasolines went down, as did prices during the relevant period; there­fore, its ad­vertising did not proximately cause any damages to plaintiff.  

As Dr. Latham stated in his second affidavit filed by plain­tiff, how­ever, the question is not whether demand for the premium gasolines went down but whether demand and prices were artificially high for the rele­vant time period due to misleading advertising.  In other words, without the advertising, would the demand and prices of defendant's premium gasolines have been 
even
 
lower
 during the relevant time period?  Dr. Latham contends he can isolate the vari­ables that go into fueling the demand, calcu

late the amount of the artificially high prices during the rele­

vant peri­od attributable to the advertising, and then calcu­late the amount plaintiff overpaid­, therefore showing defendant's misleading advertis­ing proximately caused plaintiff and anyone else who bought defendant's premium gasoline to pay in­flat­ed pric­es.

Defendant further argues the Act requires a plaintiff to allege with specificity misrepresentations were made and to whom they were made.  Defendant cites 
Connick
 for this proposi

tion.  Review of 
Connick
, however, shows its reference to allega

tions, including to whom specific misrepresentations were made, was in rela­tion to plead­ing a cause of action for common law fraud, which requires allega­tions of misrep­resenta­tions, as well as when they were made, who made them­­­, and to whom they were made.  
Connick
, 174 Ill. 2d at 496-97, 675 N.E.2d at 591.  As we ­noted, it is not necessary to prove the elements of common law fraud to recov­er under the Act (
American Buyers Club
, 115 Ill. App. 3d at 761, 450 N.E.2d at 906) because the elements of a claim under the Act are as set forth above and stated in 
Zekman
, 182 Ill. 2d 373, 695 N.E.2d at 860.  See also 
Connick
, 174 Ill. 2d at 501, 675 N.E.2d at 593; 
Mar­tin II
, 163 Ill. 2d at 75, 643 N.E.2d at 754.

Defendant next contends plaintiff's cause of action does not fit under the Act since, pursuant to its provisions, only material misrepresen­tations are actionable.  ­Defendant cites 
Bass v. Prime Cable of Chicago, Inc.
, 284 Ill. App. 3d 116, 127, 674 N.E.2d 43, 51 (1996), and 
Mackinac v. Arcadia National Life Insurance Co.
, 271 Ill. App. 3d 138, 141, 648 N.E.2d 237, 239 (1995).  These cases list "material fact" as an element of a cause of action under the Act based on its inclusion in the defi

nition of deceptive act or practice under section 2 of the Act.  815 ILCS 505/2 (West 1996).  The materiality discussion centers on whether the misrepresentations actually caused damages to the plaintiff.  In 
Bass
, plaintiff continued to use the cable ser

vices provided by defendant after actual knowledge of the alleged misrepresentations over the cost of the services and an agreement on the part of plaintiff to pay the additional costs.  
Bass
, 284 Ill. App. 3d at 127, 674 N.E.2d at 51-52.  In 
Mackinac
, defendant had to know plaintiff had a preexisting condition that would form the basis of a requirement to inform her of the preexisting re

striction in its insurance policy; without a reason to disclose the restriction, defendant did not mislead plaintiff by failing to dis­close.  
Mackinac
, 271 Ill. App. 3d at 143, 648 N.E.2d at 240.

A "material fact" exists where (1) a plain­tiff would have acted differ­ently had he or she been aware of the infor­mation, or (2) it concerned the type of information upon which he or she would be expect­ed to rely in making a decision to act.  
Connick
, 174 Ill. 2d at 505, 675 N.E.2d at 595; 
Mackinac
, 271 Ill. App. 3d at 141, 648 N.E.2d at 239.  Defendant's adver­tised assertions that its premium gaso­lines were better for the envi­

ronment and a consumer's car are material facts because consumers would be expect­ed to rely on those facts when deciding whether to pur­chase gasoline.  It is not necessary under the Act that plain

tiff actu­ally relied on those asserted facts.  

In reviewing the legal adequacy of a complaint, we must interpret the allegations of the complaint in the light most favorable to plaintiff.  
DiBenedetto v. Flora Township
, 153 Ill. 2d 66, 69-70, 605 N.E.2d 571, 573 (1992).  The complaint must allege facts which, if proved, would entitle plaintiff to relief.  
Charles
, 165 Ill. 2d at 485-86, 651 N.E.2d at 156.  We do not decide the likelihood of plaintiff proving his case but only that he is entitled to relief upon proving the facts alleged.  

We find plaintiff's com­plaint ade­quate­ly stat­ed a cause of action for consumer fraud under the Act.  First, plaintiff's com­plaint ade­quate­ly pled a deceptive act or practice by defen­

dant.  Spe­cifi­cally, plain­tiff alleged defen­dant repre­sented in its adver­tising that its premium gasolines had special fea­tures which would produce in­creased performance in automobiles and had envi­ronmental bene­fits and that this informa­tion was false.  

Second, plaintiff alleged defendant intended purchasers to rely on these statements, which he claims is evident due to the representations themselves and the fact they were in radio, television, and print ads.  Third, plaintiff alleged these state

ments were made in trade or commerce.  Fourth, plaintiff has alleged proxi­mate cause.  Plaintiff's purchases are alleged to have been made after the alleged fraudulent statements were made and the state­ments caused higher prices than what would have oc­

curred for the peri­od in ques­tion for defendant's premium gaso­

lines but for the advertisements.  

C. Propriety of Class Certification Denial

We next consider whether class certification was im­

properly denied.  Whether to certify a class action is a matter within the sound discretion of the trial court, and its decision will be reversed only upon a showing of a clear abuse of discre

tion or the application of impermissible legal criteria.  
Schlenz v. Castle
, 84 Ill. 2d 196, 203, 417 N.E.2d 1336, 1339 (1981).  

A class action may not be certified unless the trial court finds:

"(1) The class is so numerous that joinder

of all members is impracticable.

(2) There are questions of fact or law com-

mon to the class, which common questions pre-

dominate over any questions affecting only 

individual members.

(3) The representative parties will fairly 

and adequately protect the interest of the

class.

(4) The class action is an appropriate method 

for the fair and efficient adjudication of 

the controversy."  735 ILCS 5/2-801 (West 1996).  

In this case the trial court denied class certification because it rejected plaintiff's "marketing scheme theory."  The court found a lack of predominating common issues of fact or law because even Dr. Latham admitted a number of determinants exist, such as income, location of service stations, or prices of other goods and services, that would im­pact a consum­er's deci­sion to buy gaso­line in addi­tion to whether the consumer believed defen

dant's adver­tising­.  The court found too many variables existed to find questions of fact common to the class or that the common questions would predominate over other questions af­fecting indi

vidual members.  The court also found the ­Act did not extend to persons who were not Illinois consumers; therefore, there could be no common questions of law.

Plaintiff contends, first, the trial court erred in  find­ing the Act did not apply to consumers outside Illinois.  He claims the language in the Act makes no dis­tinction between Illi

nois residents and nonresidents­.  815 ILCS 505/2 (West 1996).  He ­notes the Act's definition of "person[s]" covered includes "
any
 natural person or his legal representative, partner­ship, corpora

tion (domestic and foreign), company, trust, business enti­ty or association."  (Emphasis added.)  815 ILCS 505/1(c) (West 1996).  Finally, he notes section 1(f), defining "trade" and "com­merce," refers to trade or commerce directly or indirectly affect­ing the people of Illinois.  815 ILCS 505/1(f) (West 1996).

The Supreme Court of Illinois has not ruled specifi

cally on this issue.  It has noted the Act's purpose is to pro

tect Illinois consumers, borrowers, and business­men.  
Scott v. Ass'n for Childbirth at Home, International
, 88 Ill. 2d 279, 288, 430 N.E.2d 1012, 1017 (1981).  Plain­tiff cites 
Miner v. Gillette Co.
, 87 Ill. 2d 7, 428 N.E.2d 478 (1981), where a class ac­tion was cer­ti­fied that included nonresi­dents of Illi­nois and involved sev­er­al counts in­clud­ing one based on the Act
.  Wheth­er the Act applied to nonresident con­sumers was not an issue in the case, however, and the court made no ruling on the subject.  Plaintiff also cites 
Gordon v. Boden
, 224 Ill. App. 3d 195, 202, 586 N.E.2d 461, 466 (1991), where a class action based on the Act was certi­

fied at the appel­late court level.  Finally, plaintiff cites 
Martin v. Heinold Commodities, Inc.
, 117 Ill. 2d 67, 510 N.E.2d 840 (1987) (hereinafter 
Martin I
), where the ­su­preme court cer­ti­

fied a class ac­tion under the Act that in­clud­ed non-Illi­nois plain­tiffs but its decision was based on the following:  (1) the contracts contain­ing the decep­tive state­ments were all executed in Illi­nois; (2) the con­tract con­tained express choice of law and forum selection clauses spec­ifying any litiga­tion would be con­

ducted in Illinois under Illi­nois law; and (3) com­plaints regard­

ing the defendant's perfor­mance were to be di­rect­ed to its Chi

cago office.  
Mar­tin I
, 117 Ill. 2d at 82-83, 510 N.E.2d at 847.    Both plain­tiff and defendant refer to "Il­li­nois cas­es" that have ruled on the issue but they are actually fed­eral dis­

trict court cases that ap­plied Illi­nois law and at­tempt­ed to divine how the ­Su­preme Court of Illinois would rule if con­fronted with the issue.  Of these cases, more of them found the supreme court would not apply the Act to nonresident consum­ers (see 
Hast

ings v. Fidelity Mortgage Decisions Corp.
, 984 F. Supp. 600, 615 (N.D. Ill. 1997); 
Rohlfing v. Manor Care, Inc.
, 172 F.R.D. 330, 340 (N.D. Ill. 1997); 
Swartz v. Schaub
, 818 F. Supp. 1214, 1214 (N.D. Ill. 1993); 
Seaboard Seed Co. v. Bemis Co.
, 632 F. Supp. 1133, 1140 (N.D. Ill. 1986)) than found the court would apply the Act to nonresi­dent con­sumers (see 
Nichols Mo­torcycle Supply Inc. v. Dunlop Tire Corp.
, 913 F. Supp. 1088, 1140 (N.D. Ill. 1995); 
Fry v. UAL Corp.
, 136 F.R.D. 626, 637 (N.D. Ill. 1991)). 

Language in 
Scott
 refers to the Act's purpose as pro

tecting Illinois consumers (
Scott
, 88 Ill. 2d at 288, 430 N.E.2d at 1017).  The language of the Act itself refers to trade or commerce under the Act as "di­rectly or indirectly affecting the people of this State." 
 815 ILCS 505/1(f) (West 1996).  In the case of an out-of-state con­sumer, the trade or commerce referred to by the Act occurred outside Illinois where the putative class members lived, purchased gasoline, and were allegedly harmed.  They had no contact with Illinois. 

Plaintiff argues the idea for the deceptive advertising campaign ­originated in Illinois where defendant had its corporate head­quarters.  Howev­er, the suggestion defendant's fraud scheme "emanated" from employees of defendant in Illi­nois does not consti­tute trade or com­merce af­fecting Illinois consumers.  The Act does not seek to punish evil thoughts but actual decep­tive acts and prac­tices.  Absent a specific ruling from the supreme court that the Act applies to out-of-state consumers, we de­cline to find it applies as the court has stated the Act's purpose is to protect Illinois consumers.  
Scott
, 88 Ill. 2d at 288, 430 N.E.2d at 1017.  

Plaintiff next argues the trial court improperly con­

cluded Illinois law may not be applied to non-Illinois class members' claims.  Illinois law may be applied to the nationwide class only if Illinois has significant contact or aggregation of contacts to the claims asserted by each member of the class.  
Phillips Petroleum Co. v. Shutts
, 472 U.S. 797, 821-22, 86 L. Ed. 2d 628, 648, 105 S. Ct. 2965, 2979 (1985).  Plaintiff ar­gues defendant is headquartered in Illinois, the advertising campaign was conceived of and approved and disseminated in Illinois­.  He argues no other state has more significant contacts and Illinois has more than sufficient contacts to ensure appli­ca­tion of its law is neither arbitrary nor capricious.  

However, contrary to plaintiff's assertions, defen

dant's contacts alone do not determine whether Illinois law will be applied.  Illinois has no authority to regu­late out-of-state transactions affecting non-Illinois citizens, such as the pur­

chase of gaso­line, and has no interest in doing so.  Further, while Illinois has an interest in seeing Illinois corpo­rations do not engage in deceptive practices, its Consumer Fraud Act does not apply to consumers outside Illinois or business conducted outside Illinois.  While the Act does not require reliance, other states' courts may have found their con­sumer fraud acts require reliance as an ele­ment of a claim.  See, 
e.g.
, 
Gross v. Johnson & John­son-Merck Con­sumer Pharmaceuticals Co.
, 303 N.J. Super. 336, 344-46, 696 A.2d 793, 796-98 (1997).  Further, in states without a consum­er fraud act, a plaintiff would need to rely on common law fraud, which does require reliance to state a cause of ac

tion.   

Where another state's consumer fraud act requires reli­

ance to state a claim, what is unlawful in Illinois--false or misleading advertising whether or not it was relied upon by a given consumer--may not be unlawful in another state.  Illi­nois may not impose sanctions on violators of its law with the intent of changing the violator's conduct in other states if it was lawful where it occurred and had no impact on Illinois or its residents.  
BMW of North America, Inc. v. Gore
, 517 U.S. 559, 572-73, 134 L. Ed. 2d 809, 824-25, 116 S. Ct. 1589, 1597 (1996).  

As the purchase of gasoline in his or her respective state and the determinants of the price paid for it were what trig­gered each po­ten­tial plaintiff's cause of ac­tion, something that does not affect Illinois com­merce or con­sumers, no signifi­

cant connection to Illinois justifies the use of Illinois law.  The trial court did not abuse its dis­cre­tion in find­ing Illinois law did not apply to nonresident consum­ers.

Without the use of Illinois law to govern the class ac­

tion, the claims of each putative plaintiff would be governed by the laws of each state where the gasoline was purchased.  ­There is no common law to apply.  As to predominance of common facts, the trial court found the question of each indi­vidu­al plaintiff's reli­ance on defendant's advertising would gov­ern the claims.  As we noted, individual reli­ance is unnecessary under the Act.  However, without the Act govern­ing claims from out-of-state plaintiffs, reliance may very well be an issue either under an

other state's consumer fraud act or under common law fraud.  The claims of out-of-state plain­tiffs would require individual fact finding and no predominance of common facts exists.  The trial court did not abuse its discretion in finding no predominance of common issues of fact or law.

III. CONCLUSION

     We reverse the trial court's dismissal of plaintiff's cause of action but affirm its refusal to certify the nationwide class action requested by plaintiff.

Affirmed in part and reversed in part.         
 

MYERSCOUGH, J., concurs. 

McCULLOUGH, J., specially concurs.

JUSTICE McCULLOUGH, specially concurring:

Because this is a review of the trial court's order of dismissal pursuant to section 2-615, and not a determination of likelihood of plaintiff's proving his case, I concur.  Treating this as a section 2-615 motion, there is no need to consider the affidavits of the parties.  The affidavits are appropriately considered in a summary judgment posture.